IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROQUE "ROCKY" DE LA FUENTE,<br>Candidate for President of the United States;<br>(2) JILL STEIN, Candidate for President<br>of the United States,<br>(3) JONI ALANE LEVINESS;<br>(4) MAIGAN UNDERWOOD, and<br>(5) RACHEL C. JACKSON     …..Plaintiffs,<br><br>   v.<br><br>(1) PAUL ZIRIAX, Secretary of the<br>Oklahoma State Election Board; and the<br>(2) OKLAHOMA STATE ELECTION BOARD,<br>                    ….. Defendants. | Case No.   CIV-16-914-F |

C O M P L A I N T

COME now the Plaintiffs, by and through their counsel of record, and allege and state as

follows, to-wit:

PARTIES

I.

Plaintiff ROQUE "ROCKY" DE LA FUENTE is a resident of the State of Florida, and

an Independent candidate for the office of President of the United States.

Plaintiff JILL STEIN is a resident of the State of Massachusetts, and the Green Party

candidate for the office of President of the United States.

Plaintiff JONI ALANE LEVINESS is a resident of Tulsa County, Oklahoma, a registered

voter in Tulsa County, Oklahoma, a member of the Cooperative Council of the Green Party of

Oklahoma, and desires to vote for Plaintiff JILL STEIN in the year 2016 Presidential election

and, if the name of JILL STEIN does not appear on the Oklahoma ballot in the year 2016,

Plaintiff JONI ALANE LEVINESS—because Oklahoma, pursuant to Okla. Stat. tit. 26, § 7-

127(1), totally bans write-in voting—will abstain from voting for any of the other candidates on the Oklahoma Presidential ballot for President and Vice President.

Plaintiff MAIGAN UNDERWOOD is a resident of Tulsa County, Oklahoma, a registered voter in Tulsa County, and desires to vote for Plaintiff JILL STEIN in the year 2016 Presidential Election and, if the name of JILL STEIN does not appear on the Oklahoma ballot in the year 2016, Plaintiff MAIGAN UNDERWOOD—because Oklahoma, pursuant to Okla. Stat. tit. 26, § 7-127(1), totally bans write-in voting—will abstain from voting for any of the other candidates on the Oklahoma Presidential ballot for President and Vice President.

Plaintiff RACHEL C. JACKSON is a resident of Cleveland County, Oklahoma, a registered voter in Cleveland County, and desires to vote for Plaintiff JILL STEIN in the year 2016 Presidential Election and will serve as a Presidential elector for Jill Stein in Oklahoma.

That the Plaintiff ROQUE "ROCKY" DE LA FUENTE (hereinafter referred to as "De La Fuente") has seven Oklahoma registered voters who are willing to serve as presidential electors for DE LA FUENTE for President, as required by Okla. Stat. tit. 26, § 10-101.1(3) and will subscribe to the oath required in the aforesaid statute.

That the Plaintiff JILL STEIN (hereinafter referred to as "Stein") has seven Oklahoma registered voters who are willing to serve as presidential electors for STEIN for President, as required by Okla. Stat., tit. 26, § 10-101.2(3) and will subscribe to the oath required in the aforesaid statute.

II.

Defendant PAUL ZIRIAX is the Secretary of the Defendant Oklahoma State Election Board (hereinafter referred to as Defendant Board).

Defendant BOARD is a state agency and body politic organized under the laws of the State of Oklahoma, viz.:  Okla. Stat. tit. 26, § 2-101, *et seq*., to operate and perform such duties as are prescribed by law for the purposes of overseeing elections conducted in the State of Oklahoma.

All the aforesaid Defendants have offices in the State Capitol Building in Oklahoma City, Oklahoma.

JURISDICTION AND VENUE

III.

This is an action for declaratory and injunctive relief.  The jurisdiction of this Court is invoked pursuant to Title 28, United States Code, § 1343(3), (4), 2201, and 2202, and Title 42, United States Code, § 1983.  Venue of this Court is invoked pursuant to Title 28, United States Code, § 1391.  The rights, privileges, and immunities sought to be declared and redressed are those secured by the First and Fourteenth Amendments to the United States Constitution.

IV.

This proceeding seeks a judgment declaring Okla. Stat. tit. 26, §§ 5-112, 10-101.1, and 10-101.2, as applied herein to the Plaintiffs for the 2016 Oklahoma General Election and all subsequent General Elections in the State of Oklahoma and the facts and circumstances relating thereto, unconstitutional in that they violate in their application to the Plaintiffs herein for the 2016 Oklahoma General Election, and all subsequent Oklahoma General Elections, the First and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, § 1983, by requiring an unnecessarily early petition filing deadline, and unnecessarily high petition signature requirement, and denying Plaintiffs the equal protection of the law and discriminating in favor of Independent non-presidential candidates for statewide federal office,

3

i.e., U.S. Senator, by allowing Independent candidates for U.S. Senator for Oklahoma to pay a filing fee of One Thousand Dollars, but not allowing a filing fee option for Independent and/or unrecognized political party candidates for President of the United States, thus, creating a discriminatory treatment within a class of candidates (viz.:  Independent Federal candidates for statewide office as opposed to Independent or non-recognized political party candidates for President of the United States) without a constitutionally compelling interest or rational basis by the State to justify such disparate treatment, even though the State of Oklahoma has a lesser interest in regulating Presidential elections than non-presidential elections.  This proceeding also seeks an injunction, both temporary and permanent, against the Defendant Board, and its Secretary, Paul Ziriax, Defendants above-styled, and their members, agents, and employees, prohibiting said Defendants from following and enforcing the provisions of Okla. Stat. tit. 26, §§ 5-112, 10-101.1, and 10-101.2, as applied to the Plaintiffs herein for the 2016 Oklahoma General Election, and all subsequent Oklahoma General Elections, so as to serve to prevent the listing on the Oklahoma ballot of Plaintiff ROQUE "ROCKY" DE LA FUENTE as an Independent candidate for President of the United States and JILL STEIN as the Green Party candidate for President of the United States.

## ELECTION STATUTES IN QUESTION

### V.

The laws in question which were stated in rhetorical paragraph IV above are, in pertinent part, as follows, to-wit:

Okla. Stat., tit. 26, § 5-112,

> A declaration of candidacy must be accompanied by a petition supporting a
> candidate's filing signed by four percent (4percent) of the registered voters eligible
> to vote for a candidate in the first election wherein the candidate's name could
> appear on the ballot, as reflected by the last January 15 registration report; or by

a cashier's check or certified check in the amount of Two  Hundred Dollars ($200.00) for candidates filing with the Secretary of the State Election Board or the secretary of a county election board; provided, however, such cashier's check or certified check shall be in the amount of * * * One Thousand Dollars ($1,000.00) for candidates for United States Senator[.]

Okla. Stat., tit. 26, § 10-101.1,

The names of a slate of candidates for the office of Presidential Elector pledged to an Independent candidate for President of the United States shall be printed on the ballot only by observing the following procedure:

1.  No later than July 15 of a presidential election year, petitions signed by a number of registered voters supporting the candidacy of said candidate for President of the United States equal to at least three percent (3percent) of the total votes cast in the last General Election for President shall be filed with the Secretary of the State Election Board.  The form of said petitions shall be prescribed by the Secretary.  Each page of said petitions must contain the names of registered voters from a single county.

2.  Within thirty (30) days after receipt of said petitions, the State Election Board shall determine the sufficiency of said petitions.

3.  If the petitions are found to be sufficient, the Independent candidate for President of the United States shall, no later than September 1, certify to the Secretary of the State Election Board the names of the nominees for Presidential Elector pledged to him and the name of his Vice Presidential running mate.  Each candidate for Presidential Elector so nominated shall subscribe to an oath stating that, if elected, he will cast his ballot for the candidate who nominated him and for said candidate's Vice Presidential running mate.  Said oath shall be filed with the Secretary of the State Election Board no later than September 15.

Okla. Stat., tit. 26, § 10-101.2,

The names of a slate of candidates for the office of Presidential Elector pledged to the nominee of a political party not recognized under the laws of the State of Oklahoma for President of the United States shall be printed on the Ballot only by observing the following procedure:

1.  No later than July 15 of a presidential election year, petitions signed by a number of registered voters supporting the candidacy of said nominee for President of the United States equal to at least three percent (3percent) of the total votes cast in the last General Election for President shall be filed with the Secretary of the State Election Board.  Notice of intention to circulate petitions shall be filed with the Secretary of the State Election Board before such petitions may be circulated.  The form of said petitions shall be prescribed by the Secretary.

Each page of said petitions must contain the names of registered voters from a single county.

2.  Within thirty (30) days after receipt of said petitions, the State Election Board shall determine the sufficiency of said petitions.

3.  If the petitions are found to be sufficient, the nominee for President of the United States shall, no later than September 1, certify to the Secretary of the State Election Board the names of the nominees for Presidential Elector pledged to him and the name of his Vice Presidential running mate. Each candidate for Presidential Elector so nominated shall subscribe to an oath stating that, if elected, he will cast his ballot for the candidate who nominated him and for said candidate's Vice Presidential running mate. Said oath shall be filed with the Secretary of the State Election Board no later than September 15.

FACTS COMMON TO ALL COUNTS

VI.

That, while Okla. Stat. tit. 26, §§ 10-101.1 and 10-101.2 provide a means through petitioning for Independent and nonrecognized political party candidates for President and Vice President to appear on the ballot in Oklahoma as an Independent candidate or with the party label of an unrecognized political party, respectively, the petition signature deadline is unnecessarily early and before the deadline in 38 states and the District of Columbia, as well as requiring significantly higher petition signatures than that which is required to have a political party recognized in Oklahoma, as well as a percentage petition signature requirement higher than any other state in the Union.  Further, Okla. Stat. tit. 26, § 5-112 provides a means in lieu of petition signatures for Independent candidates for statewide Federal office in Oklahoma, i.e., United States Senator, to appear on the Oklahoma ballot by simply paying a fee by cashier's or certified check of one thousand dollars ($1,000) and the filing of a Declaration of Candidacy with the Secretary of the State Election Board.  Additionally, all Independent candidates in Oklahoma, whether for a statewide federal office or a statewide state office, since the adoption of the alternate options of paying a filing fee or gathering petition signatures for the statewide federal

6

office of United States Senator or the statewide state office of Governor, or any other statewide

state office, have used the filing fee option for ballot access instead of the petition signature

option for ballot access of Okla. Stat. tit. 26, § 5-112, which was previously until August 27,

2010, 5 percent of the registered voters eligible to vote for a candidate in the first election

wherein the candidate's name could appear on the ballot until the Legislature lowered the

percentage to 4 percent effective August 27, 2010.

VII.

In fact, while the Oklahoma ballot has been frozen in the status quo since the 1992

general election as to Presidential candidates obtaining ballot access status pursuant to either

Okla. Stat. tit. 26, § 10-101.1, or 10-101.2 (with no presidential candidates who are independent

or the nominees of a non-recognized political party obtaining ballot status in Oklahoma),

Independent candidates for U.S. Senator have regularly appeared on the Oklahoma ballot by

simply paying a filing fee from 1992 through 2016, with anywhere from one to three

Independent U.S. Senate candidates being on the Oklahoma ballot in any general election year in

which a U.S. Senator is up for election in Oklahoma.  The filing fee for United States Senator is

One Thousand Dollars, and the filing fee for the other aforesaid statewide state offices is Five

Hundred Dollars, except for Governor, which is One Thousand Five Hundred Dollars.  However,

there is no provision in the aforesaid Okla. Stat. tit. 26, § 5-112 for a filing fee means of

candidacy for an Independent or nonrecognized party candidate in Oklahoma for President and

Vice President of the United States.

VIII.

Oklahoma has the most restrictive ballot access laws for presidential and vice presidential

candidates of Independent or non-recognized political party status in the United States.  In fact,

Oklahoma is the only state having a petition signature requirement above 2 percent of the

previous vote for President or Governor, with most states having a requirement of less than one

percent (1 percent) of the previous vote for President or Governor.  Because of the relatively

stringent ballot access laws in Oklahoma and the immense task of obtaining ballot status

throughout the United States for a Presidential candidate in 2016, the supporters of DE LA

FUENTE and STEIN in Oklahoma were unable to marshal their resources in such a manner as to

conduct a successful petition drive in Oklahoma pursuant to Okla. Stat. tit. 26, §§ 10-101.1 and

10-101.2, respectively, and also achieve ballot status in the other States and the District of

Columbia at present.  Therefore, as stated hereinabove, the supporters of DE LA FUENTE and

STEIN in Oklahoma, respectively, are willing to forward Declarations of Candidacy on behalf of

the Plaintiff ROQUE "ROCKY" DE LA FUENTE as an Independent candidate for President of

the United States and the Plaintiff JILL STEIN as the Green Party candidate for President of the

United States, along with certified checks in the amount of One Thousand Dollars, or such sum

as the Court should direct, to the Defendant PAUL ZIRIAX, Secretary of the Board, or, in the

alternative, turn in petition signatures by registered Oklahoma voters in such number and at such

time as the Court should order in order to show a modicum of support for the candidacies of De

La Fuente and Stein.

IX.

The Oklahoma ballot access law of Okla. Stat. tit. 26, § 1-101.1, as such applies to

Independent candidates under Oklahoma law for President of the United States and their

presidential electors, and Okla. Stat. tit. 26, § 1-101.2, as such applies to a non-recognized

political party under the laws of the State of Oklahoma for President of the United States and

their presidential electors, sets an unconstitutional early deadline of July 15th in presidential

election years and requires the highest percentage of petition signatures of any State in the Union and significantly higher than the petition signature requirement in Oklahoma for full political party recognition. Said deadline is before the dates of the conventions of the major political parties. Further, because of the less restrictive and more reasonable ballot access requirements for presidential and vice presidential candidates of other states, the less restrictive laws of other states in the Union effectively subsidize and assist Oklahoma in maintaining its restrictive and oppressive ballot access laws for presidential and vice presidential candidates who are not members of the major political parties recognized currently under Oklahoma election law. If all states of the United States had ballot access laws for presidential and vice presidential candidates not associated with the major political parties to the same extent as Oklahoma, presidential and vice presidential candidates of minor political parties and independent status would be prevented from maintaining a nationwide campaign as alternative choices to the major political party candidates, thus, maintaining the political status quo and stifling the exercise of First Amendment rights to political speech and political association.

X.

In the year 2016, the Republican Party nominated its presidential and vice presidential candidates during its national convention from July 18 through July 21, 2016. The Democratic Party nominated its presidential and vice presidential candidates during its national convention from July 25 through July 28, 2016. Plaintiff Stein received the Green Party nomination for President of the United States and Ajamu Baraka received the Green Party nomination for Vice President of the United States at the Green Party's national convention on August 6, 2016. The Defendants herein will not require the aforesaid nominees of the Republican and Democratic parties to present any nominating petition indicating their support in Oklahoma because said

nominees of the Republican and Democratic parties for President and Vice President are for parties already recognized in the State of Oklahoma. In contrast, Independent presidential candidates or Presidential candidates of non-recognized political parties in Oklahoma must submit petition signatures by July 15 of a presidential election year in the amount of 40,046 for the presidential election to be conducted in Oklahoma in the year 2016.

XI.

So restrictive, severe, and discriminative is Oklahoma's ballot access law for Presidential candidates who are Independent or the nominee of a political party not recognized in the State of Oklahoma, that even a prominent Presidential candidate such as Ralph Nader failed to appear on the Oklahoma Presidential ballot in 1996, 2000, and 2004, and the nominee of the Libertarian Party failed to appear on the Oklahoma Presidential ballot in 2004, 2008, and 2012. In fact, in 2004, 2008, and 2012, Oklahoma was the only State in which there were only two candidates on the ballot for President of the United States. Since the last time this Court reviewed the election laws in question challenged herein, Oklahoma's ballot access for Presidential candidates of minor party or Independent status has become even less receptive to access for non-major party candidates so as to have the laws in question not complied with for an even longer period of time. In the aforesaid Presidential elections in Oklahoma in 2004, 2008, and 2012, even the nominee for President of the United States of the Democratic Party failed to carry any of the 77 counties of Oklahoma. In the most recent Presidential election in Oklahoma of 2012, the Democratic candidate for President of the United States (President Barack Obama) lost every single county in Oklahoma by landslide proportions—viz:, a 10 percent margin or more.

XII.

As a demonstration of how much Oklahoma's ballot access laws for Presidential candidates maintain the status quo and stifle First Amendment rights, neither Okla. Stat. tit. 26, § 10-101.1 or § 10-101.2 have been successfully complied with since 1992.  While no political party had been able to obtain ballot recognition in Oklahoma, pursuant to Okla. Stat., tit. 26, § 1-108, since the 2000 Presidential election through 2015, and because previous election law changes had moved the deadline for filing political party recognition petitions from May 31 of the general election year to March 1st of the general election year, Oklahoma lowered the petition signature requirement in 2015 from 5 percent of the last gubernatorial or presidential vote to 3 percent of the last gubernatorial vote.  In 2016, Oklahoma lowered the political party retention requirement of Okla. Stat., tit. 26, § 1-109 from 10 percent of the last gubernatorial or presidential vote to 2 ½ percent of the last Presidential or Gubernatorial vote, and allowed for the Presidential electors of Presidential candidates in Oklahoma not to have their names printed on the Oklahoma ballot.  Despite these changes, only the Libertarian Party was able to comply with the new requirements of Okla. Stat., tit. 26, § 1-108 for the general election in Oklahoma of 2016.  The Libertarian Party of Oklahoma was further aided by the fact that the voter turnout in the most recent gubernatorial election in 2014, was 824,831 votes—the lowest vote total in an Oklahoma gubernatorial election since 1978, even though the population of Oklahoma has increased by approximately one million people since 1978.

XIII.

In contrast, while only 24,745 petition signatures were required to obtain political party status in Oklahoma in 2016, 40,047 petition signatures were required to obtain ballot status for an Independent or non-recognized political party presidential candidate in Oklahoma in 2016.

While the party petition requirement for recognition and the independent and non-recognized
political party presidential candidate petition requirement both use a 3 percent petition
requirement, the political party requirement of 3 percent applies to the last gubernatorial election
vote total, while the Independent or non-recognized political party presidential petition
requirement of 3 percent applies to the last presidential election vote total, thus, resulting in a
significantly higher requirement of petition signatures for independent and non-recognized
presidential candidates, as opposed to recognition of a new political party in Oklahoma, because
more than a half million more voters in Oklahoma participated in the most recent presidential
election than in the most recent gubernatorial election (1,334,872 in 2012 versus 824,831 in
2014).  In Oklahoma, total voter turnout for Presidential elections is consistently significantly
higher in Presidential elections than in Gubernatorial elections.

XIV.

The early filing deadline, combined with Oklahoma's absolute ban on write-in voting, the
unnecessary and burdensome signature requirement, and the lack of a filing fee alternative for
presidential and vice presidential candidates operates to exclude candidates whose prominence
grows out of reactions to the events of the major party's primary season and changing political
developments, and who lack a recognized political party organizational structure by the State of
Oklahoma.  Only candidates who rely on paid petitioners can collect a significant number of
signatures by the July 15th presidential deadline (e.g., Ross Perot and 1992).  No previous
alternative presidential candidates have been able to appear on the Oklahoma ballot without a
substantial expenditure of money for paid petitioners.  Such monetary expenditures in order to
meet petition signature deadlines in Oklahoma operate to deny Oklahoma voters an opportunity

to vote for late emerging candidates who have significant public support but lack a recognized political party organization or extensive financial resources.

XV.

The early petition signature deadline in Oklahoma for Independent presidential candidates and non-recognized political party Presidential candidates, coupled with Oklahoma's absolute ban on write-in voting and the significant signature requirement—in contrast to the relatively reasonable and less restrictive requirements of other states for candidates for President and Vice President of the United States seeking ballot access—forces an Independent or non-recognized political party Presidential candidate to demonstrate substantial support before the major political parties have named their nominees or formally adopted their platform, at a time when many serious alternative candidates for President are still in their formative stage, and when it is unlikely that potential supporters have developed into a fully cohesive and identifiable group. Because of the aforesaid hardships, Oklahoma's early presidential deadline, as set forth in Okla. Stat. tit. 26, §§ 10-101.1 and 10-101.2, effectively cuts off serious and important candidates from appearing on the Oklahoma ballot and transforms the petitioning process from a way to demonstrate popular support into a race to meet an arbitrarily and unnecessarily early deadline. At present, Oklahoma's deadline for Independent and non-recognized political party presidential candidates is one of the earliest in the United States. Thirty-eight states and the District of Columbia have presidential petition deadlines in either August, September, or later of a General Election year. Oklahoma's early aforesaid presidential deadline places an undue, unreasonable, unjustified, and severe burden on unrecognized political party and Independent presidential candidates. The Defendants lack any compelling interest in the aforesaid presidential deadline in Oklahoma as it applies to presidential candidates, which requires an

13

Independent presidential candidate to file his petitions for ballot access well before the nominating conventions of the two major political parties.

COUNT I

XVI.

ROQUE "ROCKY" DE LA FUENTE declared his intention to run for President of the United States as an Independent for the general election to be conducted on November 8, 2016. He has organized a nationwide campaign for President of the United States.  Mr. DE LA FUENTE is petitioning or pursuing other means to be on the ballot as an Independent candidate for President of the United States.

XVII.

On information and belief, Plaintiff DE LA FUENTE asserts that absent intervention by this Court, ROQUE "ROCKY" DE LA FUENTE will not be on the ballot in Oklahoma in the year 2016.

XVIII.

As of August 9, 2016, the aforesaid candidate for President of the United States and his Presidential electors has been able to obtain access to the ballot or are nearing completion of their ballot goals in a number of states.  Further, Oklahoma, pursuant to Okla. Stat. tit. 26, § 7-127(1), is one of only five States which completely bans write-in voting, while South Carolina bans write-in voting only in Presidential elections.

XIX.

Defendant Board and its Defendant Secretary have and will exercise their authority under color of state law in enforcing the aforesaid State laws set forth in rhetorical paragraph V above, as applied to the Plaintiffs herein for the 2016 Oklahoma General Election, and the facts and

14

circumstances relating thereto, in such a manner as to be in an unlawful, discriminatory, capricious, and arbitrary manner, in violation of the First and Fourteenth Amendments to the United States Constitution, and Title 42, United States Code, § 1983, in that:

Okla. Stat. tit. 26, §§ 5-112 and 10-101.1, as applied to the Plaintiffs herein for the 2016 Oklahoma General Election and all subsequent General Elections in Oklahoma, and the facts and circumstances relating thereto, are illegal and unconstitutional, in that they violate the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, and Title 42, United States Code, § 1983, in that the aforesaid statutes are discriminatory, unduly severe, and not framed in the least restrictive manner necessary to achieve the legitimate State interests in regulating ballot access for a Presidential election, particularly as relating to the fact that alternatives are available for all other statewide offices—except President of the United States—by the submission of a filing fee for Independent candidates so as to allow them on the General Election ballot; and, as applied to Independent presidential candidates, Oklahoma's early signature deadline, combined with Oklahoma's absolute ban on write-in voting, the denial of a filing fee option for Presidential candidates, the significant signature requirement, and other particular circumstances therein, establishes severe, discriminatory, unreasonable, and an undue burden on Independent candidates for President of the United States seeking ballot access in Oklahoma.

## XX.

The consequences of the aforesaid lack of a filing fee alternative for an Independent or non-recognized political party presidential candidate, while providing such an alternative for U.S. Senator, an absolute ban on write-in voting, relatively high petition signature requirement, particularly when compared to the significantly lower petition signature requirement for full

recognition of a political party, the relatively early petition deadline, and the continued lack of success and freezing of the status quo as to obtaining ballot access for Independent and non-recognized political party presidential candidates as opposed to the continuing success of Independent U.S. Senate candidates in obtaining ballot access in Oklahoma, all as complained of hereinabove, is that ROQUE "ROCKY" DE LA FUENTE will fail to qualify as a Presidential candidate for the General Election ballot for 2016 in Oklahoma and voters in Oklahoma will lose their choice to vote for them, thus, consigning all Oklahoma voters to the status quo of foregoing their vote or choosing between the Presidential and Vice Presidential candidates of the Republican, Libertarian, and Democratic parties.  Additionally, because votes cast for President of the United States are done in the context of a national election, voters outside Oklahoma who cast their ballots for ROQUE "ROCKY" DE LA FUENTE will have their votes effectively diluted by the refusal of the Defendants to allow ROQUE "ROCKY" DE LA FUENTE on the Oklahoma General Election ballot for 2016.

XXI.

Plaintiffs herein, as a result and for the reasons set forth hereinabove, and the aforesaid State laws set forth in rhetorical paragraph V above, will suffer immediate and irreparable harm in the event that the aforesaid complained of election laws are followed for the year 2016 and subsequent years—thus, denying the aforesaid candidates for President a place on the Oklahoma Election ballot for 2016.  Plaintiffs will thus be denied their rights to actively engage in the exercise of their free speech, right to political association, petition the government, seek redress of grievances, political candidacy, and equal protection and due process of the laws of the United States of America.  Plaintiffs have no adequate remedy at law for the denial of their rights and the impairment of the Constitutional rights, privileges, and immunities enjoyed by citizens of the

United States and the State of Oklahoma, and, unless a preliminary injunction and permanent injunction are granted, Plaintiffs will suffer great and irreparable harm.

COUNT II

XXII.

JILL STEIN received the nomination of the Green Party for President of the United States on August 6, 2016, while Ajamu Baraka received the nomination of the Green Party for Vice President of the United States. Currently, Dr. Stein is on course to be on the ballot in 45 states and the District of Columbia. She also will be a write-in candidate or on the ballot in three additional states.

XXIII.

On information and belief, Plaintiff STEIN asserts that absent intervention by this Court, JILL STEIN will not be on the ballot in Oklahoma in the year 2016.

XXIV.

As of August 9, 2016, the aforesaid candidates for President and Vice President of the United States and their Presidential electors have been able to obtain access to the ballot or are nearing completion of their ballot goals within the next month or so in approximately forty-five states and the District of Columbia. Further, Oklahoma, pursuant to Okla. Stat. tit. 26, § 7-127(1), is one of only five States which completely bans write-in voting, while South Carolina bans write-in voting only in Presidential elections.

XXV.

Defendant Board and its Defendant Secretary have and will exercise their authority under color of state law in enforcing the aforesaid State laws set forth in rhetorical paragraph V above, as applied to the Plaintiffs herein for the 2016 Oklahoma General Election, and the facts and

17

circumstances relating thereto, in such a manner as to be in an unlawful, discriminatory, capricious, and arbitrary manner, in violation of the First and Fourteenth Amendments to the United States Constitution, and Title 42, United States Code, § 1983, in that:

Okla. Stat. tit. 26, §§ 5-112 and 10-101.1, as applied to the Plaintiffs herein for the 2016 Oklahoma General Election and all subsequent General Elections in Oklahoma, and the facts and circumstances relating thereto, are illegal and unconstitutional, in that they violate the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, and Title 42, United States Code, § 1983, in that the aforesaid statutes are discriminatory, unduly severe, and not framed in the least restrictive manner necessary to achieve the legitimate State interests in regulating ballot access for a Presidential election, particularly as relating to the fact that alternatives are available for all other statewide offices—except President of the United States—by the submission of a filing fee for Independent candidates so as to allow them on the General Election ballot; and, as applied to non-recognized political party Presidential candidates, Oklahoma's early signature deadline, combined with Oklahoma's absolute ban on write-in voting, the denial of a filing fee option for Presidential candidates, the significant signature requirement, and other particular circumstances therein, establishes severe, discriminatory, unreasonable, and an undue burden on non-recognized political party candidates for President of the United States seeking ballot access in Oklahoma.

## XXVI.

The consequences of the aforesaid lack of a filing fee alternative for an Independent or non-recognized political party presidential candidate, while providing such an alternative for U.S. Senator, an absolute ban on write-in voting, relatively high petition signature requirement, particularly when compared to the significantly lower petition signature requirement for full

recognition of a political party, the relatively early petition deadline, and the continued lack of success and freezing of the status quo as to obtaining ballot access for Independent and non-recognized political party presidential candidates as opposed to the continuing success of Independent U.S. Senate candidates in obtaining ballot access in Oklahoma, all as complained of hereinabove, is that JILL STEIN will fail to qualify as a Presidential candidate for the General Election ballot for 2016 in Oklahoma and voters in Oklahoma will lose their choice to vote for them, thus, consigning all Oklahoma voters to the status quo of foregoing their vote or choosing between the Presidential and Vice Presidential candidates of the Republican, Libertarian, and Democratic parties.  Additionally, because votes cast for President of the United States are done in the context of a national election, voters outside Oklahoma who cast their ballots for JILL STEIN will have their votes effectively diluted by the refusal of the Defendants to allow JILL STEIN on the Oklahoma General Election ballot for 2016.

XXVII.

Plaintiffs herein, as a result and for the reasons set forth hereinabove, and the aforesaid State laws set forth in rhetorical paragraph V above, will suffer immediate and irreparable harm in the event that the aforesaid complained of election laws are followed for the year 2016 and subsequent years—thus, denying the aforesaid candidates for President a place on the Oklahoma Election ballot for 2016.  Plaintiffs will thus be denied their rights to actively engage in the exercise of their free speech, right to political association, petition the government, seek redress of grievances, political candidacy, and equal protection and due process of the laws of the United States of America.  Plaintiffs have no adequate remedy at law for the denial of their rights and the impairment of the Constitutional rights, privileges, and immunities enjoyed by citizens of the

United States and the State of Oklahoma, and, unless a preliminary injunction and permanent injunction are granted, Plaintiffs will suffer great and irreparable harm.

WHEREFORE, Plaintiffs demand judgment:

1. Declaring that Okla. Stat. tit. 26, §§ 5-112 and 10-101.1, in Count I, and Okla. Stat., tit. 26, §§ 5-112 and 10-101.2 in Count II, as applied to the Plaintiffs herein for the 2016 Oklahoma General Election, and all subsequent Oklahoma General Elections, and the facts and circumstances relating thereto, are illegal and unconstitutional, in that they violate the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, and Title 42, U.S.C. § 1983, in that the aforesaid statutes are discriminatory, unduly severe and burdensome, and not framed in the least restrictive manner necessary to achieve the legitimate State interests in regulating ballot access, particularly as relating to the fact that alternatives are available for the other statewide Federal office, i.e., U.S. Senator, but not President and Vice President of the United States—by the submission of a filing fee for Independent candidates to allow them on the General Election ballot and, thus, creating a discriminatory treatment within a class of candidates (viz.: Independent Federal candidates for statewide office as opposed to Independent candidates for President of the United States) without a constitutionally compelling interest or rational basis by the State to justify such disparate treatment; and the presidential filing deadline is unconstitutionally and unnecessarily early as applied to Independent presidential and vice presidential candidates in the State of Oklahoma.

2. Entering preliminary and permanent injunctions restraining, prohibiting, and enjoining the Defendants to the instant action, and all persons in active concert and participation with them, from enforcing, applying, or implementing the aforesaid complained of State Election laws

as applied to the instant Plaintiffs for the year 2016 General Election, and all subsequent Oklahoma General Elections, and the facts and circumstances relating thereto.

3.  Issuing such other injunctive relief as the Court deems necessary to the said Defendants, and all persons in active concert and participation with them, ordering them not to take any action that would deny the Plaintiffs who are citizens of the State of Oklahoma, or any other persons so inclined, the right to cast their votes for ROQUE "ROCKY" DE LA FUENTE or JILL STEIN for President of the United States, and ordering said Defendants to place the names of ROQUE "ROCKY" DE LA FUENTE and JILL STEIN on the Oklahoma ballot for the General Election in 2016.

4.  Awarding Plaintiffs the reasonable costs and expenses of this action, including attorney's fees pursuant to the Civil Rights Attorney's Fees and Awards Act of 1976, 42 U.S.C. § 1988; and

5.  Granting Plaintiffs such other and further relief as to which they may be entitled and which the Court may deem equitable and just.

Dated this 9th day of August, 2016.

> ROQUE "ROCKY" DE LA FUENTE,
> Candidate for President of the
> United States, JILL STEIN, Candidate
> for President of the United States,
> et al., Plaintiffs
>
> s/ James C. Linger
> JAMES C. LINGER, OBA#5441
> *Counsel for Plaintiffs*
> 1710 South Boston Avenue
> Tulsa, OK 74119-4810
> (918) 585-2797 Telephone
> (918) 583-8283 Facsimile
> bostonbarristers@tulsacoxmail.com