## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROQUE "ROCKY" DE LA FUENTE, Candidate for President of the United States; <br> (2) JILL STEIN, Candidate for President of the United States; <br> (3) JONI ALANE LEVINESS; <br> (4) MAIGAN UNDERWOOD, and <br> (5) RACHEL C. JACKSON, <br><br> Plaintiffs, <br><br> v. <br><br> (1) PAUL ZIRIAX, Secretary of the Oklahoma State Election Board; and the <br> (2) OKLAHOMA STATE ELECTION BOARD, <br><br> Defendants. | **Case No. CIV-16-914-F** |

## <u>MOTION TO DISMISS</u>

COME NOW the Defendants, Paul Ziriax, Secretary of the Oklahoma State Election Board, and the Oklahoma State Election Board ("Defendants") and, pursuant to Fed. R. Civ. P. 12(b)(6) moves to dismiss Plaintiffs' Complaint [Doc.1] for the following reasons:

1.     Defendant, Oklahoma State Election Board, has Eleventh Amendment immunity;

2.     Plaintiffs have failed to allege facts entitling them to relief;

WHEREFORE, Defendants pray that this Honorable Court dismiss Plaintiff's Complaint, with prejudice to refiling, that judgment be awarded to the Defendants, that the

Defendants be awarded a reasonable attorney fee as Plaintiffs' case is brought in bad faith, and any other relief that the Court finds to be just and equitable.

## STATEMENT OF THE CASE

Plaintiffs are two putative candidates for President of the United States, along with three (3) registered voters who would like to vote for those putative candidates. The candidates, Jill Stein and Roque De La Fuente, will not have their names placed on Oklahoma's presidential ballot as they have not demonstrated a modicum of support required under Oklahoma law to achieve ballot access. Under Oklahoma law, an independent candidate, such as De La Fuente, or a candidate from an unrecognized political party, such as Stein, must gather signatures of registered voters equal to at least 3% of the total votes cast in the last general election for President before the candidate's name will be placed on Oklahoma's presidential ballot. OKLA. STAT. tit. 26 §§1-101.1, 1-101.2. Thus, to achieve ballot access in the 2016 presidential election, the candidate would have to gather a minimum of 40,047 signatures. [Doc. 1 at 10]. Not only has neither candidate achieved the number of signatures necessary, **the Complaint is devoid of any facts that either candidate even tried to gather the signatures required.**

Plaintiff candidates, in lieu of any reasonable attempt to comply with Oklahoma law, have run to this Court seeking an order that Oklahoma statutes, OKLA. STAT. tit. 26 §5-112, OKLA. STAT. tit. 26 §10-101.1 and OKLA. STAT. tit. 26 §10-101.2 are unconstitutional under the First and Fourteenth Amendments to the United State's Constitution. Plaintiffs argue that the signature requirement, along with Oklahoma's ban

2

on write in voting, interfere with their constitutional right to appear on the ballot and interfere with the voters' rights to cast votes for the candidates of their choosing. Plaintiffs also allege that because Oklahoma has an alternate method of ballot access for all candidates other than candidates for president, Oklahoma's laws run afoul of the Fourteenth Amendment's Equal Protection Clause. These arguments are raised despite the fact that Plaintiffs' arguments have all been raised before in this Court and in the Tenth Circuit Court of Appeals[1], both of which have found the statutes at issue to be constitutional. Plaintiffs have alleged nothing new in their Complaint and there has been no change in the challenged statutes since this Court last ruled on their constitutionality.

In addition, Plaintiff, De La Fuente, filed a previous Complaint making essentially the same allegations as those made herein. (*See* CIV-16-583-F). After forcing the Defendants to file a Motion to Dismiss his Complaint, De La Fuente then ignored the case. Thus he defaulted and the Court ordered the case dismissed. In its Order, this Honorable Court deemed confessed Defendants' arguments, including the arguments that De La Fuente's case failed because the statutes at issue have already been held to be constitutional. (CIV-16-683-F [Doc. 10 at 3]). Nevertheless, De La Fuente brings this new case re-urging those matters which this Court has already ruled upon.

Defendants allege that the Oklahoma State Election Board, as a state agency, has Eleventh Amendment immunity from suit. Further, Plaintiffs have failed to demonstrate

---

[1] Plaintiff's attorney herein is the attorney of record in each case where the Courts have previously held Oklahoma's ballot access laws to be constitutional.

any facts, including an utter failure to identify any change in the controlling law, which would render Oklahoma's laws unconstitutional in light of all existing precedent.

## PROPOSITION I: THE OKLAHOMA STATE ELECTION BOARD HAS ELEVENTH AMENDMENT IMMUNITY

In order for Plaintiffs to invoke the jurisdiction of this Court under 42 U.S.C. §§ 1983 or 1985, they must sue a "person" as contemplated by the statute. Plaintiffs, in suing the Election Board, have not done this. Instead, Plaintiffs have sued an entity of the State. This entity is not a person and is granted Eleventh Amendment Immunity from this suit.

The Oklahoma State Election Board is a constitutionally created state Board. OKLA. CONST. art. III, §2. (The Legislature shall create a State Election Board to be charged with the supervision of such elections as the Legislature shall direct). The State or an entity of the State, cannot be sued in federal court for violations of 42 U.S.C. §§ 1983 or 1985. "Neither the State, nor a governmental entity that is the arm of the State for Eleventh Amendment purposes, nor a State official who acts in his official capacity is a person within the meaning of § 1983. *Harris v. Champion*, 51 F.3d 901 (10th Cir. 1995); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2312 (1989). A state agency is not a person under § 1983. *Harris*, *supra*.; *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145 (1979); *Coopersmith v. Supreme Court of Colorado*, 465 F.2d 993, 994 (10th Cir. 1972). Generally, a state and its agencies are entitled to immunity under the Eleventh Amendment for actions brought in federal courts, whether the action seeks damages or equitable relief. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

In this case, the Election Board is not a person. It is an agency of the State of Oklahoma, formed by the Constitution of the State of Oklahoma. The State of Oklahoma has not waived its Eleventh Amendment Immunity in this matter. As such, it is not a person for the purpose of a § 1983 lawsuit. The State has Eleventh Amendment Immunity for all claims brought against it by the Plaintiffs in this Court, and Plaintiffs' case against the Oklahoma State Election Board must be dismissed.

**PROPOSITION II: THE STATUTES AT ISSUE HAVE ALREADY BEEN FOUND CONSTITUTIONAL BASED ON THE SAME ALLEGATIONS MADE BY PLAINTIFFS HEREIN**

Plaintiffs allege that OKLA. STAT. tit. 26 §§10 - 101.1 and 10-101.2, which require that non-affiliated candidates and candidates from a non-recognized party acquire petition signatures of registered voters equaling at least 3% of the total vote of the last general election for president, violate the United States Constitution. The statutes read specifically:

> **10.10.1:** No later than July 15 of a presidential election year, petitions signed by a number of registered voters supporting the candidacy of said candidate for President of the United States equal to at least three percent (3%) of the total votes cast in the last General Election for President shall be filed with the Secretary of the State Election Board. The form of said petitions shall be prescribed by the Secretary. Each page of said petitions must contain the names of registered voters from a single county.

> **10.10.2:** No later than July 15 of a presidential election year, petitions signed by a number of registered voters supporting the candidacy of said nominee for President of the United States equal to at least three percent

5

(3%) of the total votes cast in the last General Election for President shall be filed with the Secretary of the State Election Board. Notice of intention to circulate petitions shall be filed with the Secretary of the State Election Board before such petitions may be circulated. The form of said petitions shall be prescribed by the Secretary. Each page of said petitions must contain the names of registered voters from a single county.

Plaintiffs allege that the statutory requirement that they obtain 40,047 signatures (3% of the total vote from the previous presidential election) is constitutionally infirm. Plaintiffs also allege that the above statutes combined with Oklahoma's ban on write in voting, OKLA. STAT. tit. 26 §7-127(1), imposes an unconstitutional burden on ballot access in Oklahoma. Unfortunately for Plaintiffs, these same claims have been made in the past; this court as well as the Tenth Circuit Court of Appeals have upheld Oklahoma's statutory scheme. Thus, particularly in light of the fact that Plaintiffs have pled no unique facts nor shown any intervening changes in the law, their claims should fail.

Oklahoma's election laws are constitutional. *See: Coalition for Free and Open Elections v. McElderry*, 48 F.3d 493 (10th Cir. 1995). "Oklahoma's ballot access laws governing non-recognized party electors... impose only reasonable burdens on Appellants' First and Fourteenth Amendment rights." *Id*. at 498. *See also*: *Rainbow Coalition v. Oklahoma State Election Bd.,* 844 F.2d 740, 743 (10th Cir.1988)(holding that a signature requirement of 5% of the last general election for political party candidate recognition is valid). Specifically looking at the 3% signature requirement of the Oklahoma statutes at issue, the *Coalition for Free and Open Elections* court noted:

> In contrast to the petition requirement that we upheld in *Rainbow*, which required recognized parties to file signature petitions equal to at least 5% of

> the votes cast in the last election for Governor or for Presidential electors, Oklahoma law requires electors for nonrecognized parties to submit petitions with signatures of registered voters equal to at least 3% of the total votes case in the most recent Presidential election. Because the 3% requirement is less burdensome than the 5% requirement we upheld in *Rainbow*, we find the 3% requirement constitutional as well. This conclusion is bolstered by the fact that the names of nonrecognized party electors must be submitted almost one full month after recognized parties must certify the names of their elector nominees.

*Id*. at 498.

Oklahoma has an important state interest in ensuring that candidates whose names are placed on the ballot demonstrate some modicum of support. *Rainbow Coalition* at 743. "[T]he interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Id*. (quoting *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976 (1971)). There is an extreme likelihood that an individual who cannot garner 3% of registered voters' signatures on a petition could be successful in Oklahoma, which requires all of its presidential electors to cast their votes for the plurality winner in a general election, see *Coalition for Free and Open Elections* at 501 & n.9. Further, Oklahoma has a great interest in having voters use their votes for viable candidates who have exhibited some degree of support through the ballot access process in presidential elections because it requires its electors to cast their votes for the plurality winner. *Id*.

Thus, Oklahoma has legitimate bases for the enactment of the challenged statutes and those statutes do not unreasonably burden Plaintiffs' constitutional rights. Oklahoma's

ban on write in voting does not change the analysis.  This was squarely addressed in

*Coalition for Free and Open Elections* at 499:

> Because we find Oklahoma's ballot access laws constitutional, we also
> conclude that Oklahoma's challenged ban on write-in voting is
> presumptively valid. See *Burdick*, 504 U.S. at ——, 112 S.Ct. at 2967. As
> the Court stated in *Burdick*, "when a State's ballot access laws pass
> constitutional muster as imposing only reasonable burdens on First and
> Fourteenth Amendment rights—as do Hawaii's election laws—a prohibition
> on write-in voting will be presumptively valid, since any burden on the right
> to vote for the candidate of one's choice will be light and normally will be
> counterbalanced by the very state interests supporting the ballot access
> scheme."

*Id.*

Oklahoma's laws only impose reasonable burdens on First and Fourteenth

Amendment rights. Because there is constitutional access to Oklahoma's ballot, Oklahoma

does not have to provide a write-in option. The prohibition of write in votes is

presumptively valid.

Plaintiffs also contend that Oklahoma's law violates the Equal Protection Clause,

because candidates other than for president and vice president have an alternative method

of ballot access by way of paying a filing fee. OKLA. STAT. tit. 26 §5-112. Plaintiffs

contend that this disparity violates equal protection. This argument has been addressed

several times by this Court. For example, in *Natural Law Party v. Henley*, CIV-96-1525-R

(Sept. 18, 1996) this Court stated:

> The Tenth Circuit Court of Appeals has already determined that Okla. Stat.
> tit. 26 § 101.101 and Okla. Stat. tit. 26 § 10-101.2 "impose only reasonable
> burdens on . . . Fifth and Fourteenth Amendment rights," employing the
> balancing test set forth in *Anderson v. Celebrezze*, supra. In the First

Amendment context, the Supreme Court has said that "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights . . . a prohibition on write-in voting will be presumptively valid." *Burdick*, 504 U.S. at , 112 S.Ct. at 2967, 119 L.Ed.2d at 258. Since write-in voting, like the proposed filing fee requirement, is an alternative avenue of ballot access to the signature petition requirement, and the same interests of potential candidates and voters are implicated in this equal protection challenge as are implicated in a First Amendment challenge, the Court is of the opinion that it is reasonable to apply the *Burdick* presumption to Oklahoma's failure to provide a filing fee alternative means of ballot access in Sections 10-0101.1 and 10-101.2 similar to that in Section 5- 112.

***

Because Oklahoma's level of support requirements for ballot access for presidential and vice-presidential candidates are reasonable and do not unnecessarily burden voters' fundamental rights, considering the character and magnitude of the asserted injury to their First and Fourteenth Amendment rights, and the interests already proffered by the State in *Rainbow* and *Coalition* as justifications for the burden imposed, the legitimacy and strength of those interests and the extent to which those interests makes it necessary to burden those rights, see *Coalition for Free and Open Elections v. McElderry*, supra, the Court does not see how the failure to provide some alternative means of ballot access can render the constitutional burden imposed on voters' rights by the signature petition requirement an unconstitutional burden and is of the opinion that it cannot.

*See also*: *See*: *Nader v. Ward*, 00-cv-1340-R (August 30, 2000), (law which permits non-presidential candidates to pay a fee but which does not permit presidential candidates to pay the same fee is constitutional) attached as Exhibit 1; *Barr v. Ziriax*, 08-cv-730-R, attached as Exhibit 3.; *Barr v. Ziriax*, CIV-08-730-R (April 30, 2009).

The Supreme Court has held that states may treat candidates for different offices differently without running afoul of the Equal Protection Clause. *See Clements v. Fashing*, 457 U.S. 957, 971 (1982) (plurality) (holding that restrictions on certain officers' ability to

9

run for new office did not pose Equal Protection violations where those restrictions did not apply to other offices); *see also id.* at 975 (Stevens, J., concurring) ("There is no federal requirement that a State fit the emoluments or the burdens of different elective state offices into any particular pattern. The reason, then, that appellees may be treated differently from other officeholders is that they occupy different offices."). And never would that be more important than when establishing election procedures for the office of the President. For starters, the Constitution already mandates that the election process for President shall be different than that of every other elected office in the federal government, as it is the only office selected by an electoral college as opposed to popular vote. The President also has a different constituency from a U.S. Senator, as there is only one President to represent the nation whereas there are two Senators to represent each state. Indeed, there are even different requirements for presidential electors, which makes sense given they are an entirely independent office that must be appointed in order for a state like Oklahoma to participate in the presidential election. Accordingly, the office of the President is very much unique. *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982) ("The President occupies a unique position in the constitutional scheme."). It is not similarly situated with those offices for which Oklahoma provides a filing-fee option and, as such, Oklahoma need not treat them the same.

The fact that few independent candidates have accessed Oklahoma's ballot since statehood [Doc.1 at 10-11] is not dispositve of the inquiry. In *Rainbow Coalition*, the court noted that, "[s]ince 1945, only two minority parties have successfully petitioned to gain

recognized party status .... No third party has successfully petitioned to gain recognized party status in Oklahoma for a gubernatorial election year since 1974 when the petition signature requirement was changed from 5,000 signatures to five percent of the votes cast in the preceding general election." 844 F.2d at 742. Despite this evidence, the Tenth Circuit found Oklahoma's ballot access laws to be constitutional.

Not only the Tenth Circuit, but this district court, as well, has consistently held that Oklahoma's ballot access laws are constitutional. *See*: *Nader v. Ward*, 00-cv-1340-R, attached as Exhibit 1; *Natural Law Party v. Henley*, 96-cv-1525-R, attached as Exhibit 2; *Barr v. Ziriax*, 08-cv-730-R, attached as Exhibit 3. In addition, the Oklahoma Court of Civil Appeals has upheld Oklahoma's election laws in regards to non-recognized parties. *Libertarian Political Organization v. Clingman*, 162 P.3d 948 (Okla. Civ. App. 2007). All of the arguments currently raised in Plaintiff's Complaints have been addressed multiple times by the above referenced cases.

Thus, courts have reviewed the statutes attacked by Plaintiffs several times, under the same arguments as presented by the case at bar, and on each occasion the laws have been held constitutional. Plaintiffs have put forth no new facts or arguments nor have Plaintiffs even put forth any applicable changes in the law which might make yet another review of Oklahoma's laws reasonable. Plaintiffs state, "since the last time the Court reviewed the laws in question challenged herein, Oklahoma's ballot access for Presidential candidates has become even less receptive to access for non-major party candidates..." [Doc. 1 at 10]. However, Plaintiffs point to **no** change in the law other than an unrelated

11

provision which deals with political party recognition and retention. [Doc. 1 at 11], referencing: OKLA. STAT. tit. 26 §§1-108 and 1-109. Plaintiffs' case is not about political party recognition nor is it about political party retention, but is instead about independent access to the ballot. Thus any recent changes to §1-108 and §1-109 which made it easier to achieve and maintain political party recognition is not relevant to the matter herein. *See*: *Arutunoff v. Oklahoma State Election Board*, 687 F.2d 1375, 1380 (10th Cir. 1982)(A political group becoming a recognized political party and offering to the electorate a slate of candidates is far different than one individual becoming an independent candidate to run for a particular office).

One of the Plaintiffs herein filed a previous lawsuit over the same issues and had his case dismissed, after Defendants expended time and effort in their defense, for failing to respond to dispositve motions. The remaining Plaintiffs have brought a lawsuit over matters which have been resolved by this Court, by the circuit court and by the State courts on several different occasions. Plaintiffs, through their attorney who was the attorney on all of the previous challenges to the same statutes, have put forth no new arguments and cannot even point to a controlling change in the relevant laws which would justify this new review. Thus, not only do Plaintiffs fail to state a claim, but their case is brought in bad faith. 42 U.S.C. §1988; *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir.1995). Given the controlling case law, any amendment would be futile.  This Court should dismiss with prejudice to refiling.

## CONCLUSION

This Honorable Court should dismiss Plaintiffs Complaint with prejudice to refiling.

Respectfully submitted,

/s/M. Daniel Weitman
**M. DANIEL WEITMAN, OBA#17412**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Tel: (405) 521-4274 Fax: (405) 521-4518
Email: dan.weitman@oag.ok.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and via ECF Notice to the following ECF registrant:

James C. Linger
1710 S. Boston Ave.
Tulsa, OK 74119-4810
Email: bostonbarristers@tulsacoxmail.com

/s/M. Daniel Weitman
M. Daniel Weitman

13