## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RALPH NADER, Candidate for ) | |
| President of the United States; ) | |
| WINONA LADUKE, Candidate for ) | |
| Vice President of the United States; ) | |
| LORI K. THEIS; JAMES H. BOREN;) | |
| CHESTER W. LESLIE; HOMER L. ) | |
| WALKER; CRAIG W. FERGUSON; ) | |
| LUCILLE S. SPARKS; BRYAN C. ) | |
| BOONE; SHARON D. TILBURY; ) | |
| CONSTANCE M. THEIS; ) | |
| BENJAMIN L. ALPERS; and ) | |
| SALLY DENNISON, ) | |

FILED

AUG 3 0 2000

ROBERT D. DENNIS, CLERK
U.S DIST. COURT, WESTERN DIST OF OKLA.
BY_____ DEPUTY

DOCKETED

Plaintiffs,

v.                                          CIV-00-1340-R

LANCE WARD, Secretary of the
Oklahoma State Election Board; GLO
HENLEY, Chairman of the
Oklahoma State Election Board;
KENNETH MONROE, Vice
Chairman of the Oklahoma State
Election Board; THOMAS E.
PRINCE, Member of the Oklahoma
State Election Board; and the
OKLAHOMA STATE ELECTION
BOARD,

Defendants.

### O R D E R

This matter comes before the Court on the Motion for Preliminary Injunction, filed

by Plaintiffs.  Defendants responded in opposition to the motion.  The Court held a hearing

on the motion on August 28, 2000, to hear evidence and arguments.  The parties represent




Exhibit 1

to the Court that all necessary evidence is before the Court, and there is no justification for delaying ruling on the merits of Plaintiffs' claims.  The Court has considered the parties' submissions and finds as follows.

Plaintiffs filed this action seeking a declaration that Okla. Stat. tit. 26 §§ 5-112 and 10-101.1 are unconstitutional.  Plaintiffs ask the Court to order the State Election Board to place the Mr. Nader and Ma. LaDuke on the November 7, 2000 ballot in Oklahoma, as candidates for President and Vice President, respectively.  In the alternative, Plaintiffs ask the Court to extend the deadline set in § 10-101.1 to September 1, 2000, so that they may submit additional signatures in support of their petitions to have their candidates on the ballot.

Prior to the Court's August 28, 2000, hearing, the parties submitted the following stipulations of fact:

1.      In the year 2000, the Primary Election in the State of Oklahoma was held on August 22, 2000.

2.      In the year 2000, the Run-off Election in the State of Oklahoma is held on September 19, 2000.

3.      In the year 2000, the General Election in the State of Oklahoma is held on November 7, 2000.

4.      Ralph Nader of the State of Connecticut is a candidate for President of the United States, as a candidate of the Green Party, Progressive Party, Patriot Party, or as an



Independent in other states of the Union who desires to be an Independent candidate for President in Oklahoma.

5.      Winona LaDuke of the State of Minnesota is a candidate for Vice President of the United States, as a candidate of the Green Party, Progressive Party, Patriot Party, or as an Independent in other states of the Union who desires to be an Independent candidate for Vice President in Oklahoma.

6.      James H. Boren, Chester W. Leslie, Craig W. Ferguson, Lucille S. Sparks, Bryan C. Boone, Constance M. Theis, Benjamin L. Alpers, and Sally Dennison are all registered voters in the State of Oklahoma and willing to serve as presidential electors in Oklahoma for Ralph Nader and Winona LaDuke as Independent candidates for President and Vice President of the United States, respectively.

7.      That because of the deadline of July 15, 2000, pursuant Okla. Stat. tit. 26, § 10-101.1, fell on a Saturday in the year 2000, the Defendant Board decided to allow the supporters of Ralph Nader and Winona LaDuke to have until Monday, July 17, 2000, at 5:00 p.m., to turn in their petition signatures.

8.      A petition to place a non-recognized party or an Independent candidate on the Oklahoma ballot for President in 2000 required 36,202 valid signatures of registered Oklahoma voters.

9.      A petition to become a recognized political party for purposes of the 2000 presidential election required 43,480 valid signatures of registered Oklahoma voters.



Exhibit 1

10.    Two groups, Libertarian Party and Reform Party were successful in becoming a recognized political party by submitting more than 43,480 valid signatures by May 31, 2000.  The Natural Law Party submitted an insufficient number of valid signatures to be recognized as a political party.

11.    Since 1992, nine petitions for ballot access have been submitted to the Oklahoma State Election Board.  Six petitions were successful, two contained insufficient signatures and one was ruled invalid.  Of those petition drives, six were seeking recognized party status for the presidential election with four petition drives being successful.  Three petition drives were to place Independent or non-recognized political party candidates on the Oklahoma presidential ballot with two petition drives being successful.

12.    On Monday, July 17, 2000, supporters of Ralph Nader and Winona LaDuke for President and Vice President of the United States turned in petition signatures to the Defendant Board numbering 36,097.  On at least three occasions after July 17, 2000, supporters of Nader and LaDuke have attempted to submit additional signatures to the Oklahoma State Election Board.  The Board has refused to accept any petition signatures after July 17, 2000.

13.    Oklahoma does not allow write-in voting in its elections, including presidential elections.

14.    The 2000 General Election ballots for Oklahoma have not yet been printed, and Lance Ward, Secretary of the Oklahoma State Election Board, plans to order the printing of the 2000 General Election ballots for Oklahoma by September 20, 2000.

4


**Exhibit 1**

The following testimony was received at the hearing.  Robert Leinen, Oklahoma County Coordinator for the petition effort, testified that in May 2000, at the Bricktown Ballpark, he was told by a police officer that he could not petition there.  Petitioning continued that night near the canals in Bricktown, without incident.  At the Red Earth Festival, held at the Myriad in Oklahoma City, Mr. Leinen and other petitioners were told on Friday afternoon that they could not petition in front of the building, despite a permit that granted them permission to do so.[1]  After being denied access to the facility on Saturday morning, Petitioners were permitted to seek signatures on the sidewalk in front of the Myriad.[2]

Lori Theis, the state coordinator testified that she recruited volunteers for the petition drive.  She testified she had been told of other harassment of petitioners, and that the number of persons originally enlisted for the effort was 107, which dwindled to 65 by the end of the Red Earth festival.  None of those persons was called to testify at the hearing.  Ms. Theis also testified that some store owners did not permit petitioning in front of their businesses.

---

[1] Petitioners were permitted to seek signatures across the street from the Myriad center.

[2] Mr. Leinen returned to the Myriad on Saturday morning to seek permission to petition from the organizer of the Red Earth Festival.  Police in the building informed him that such permission would still not permit him to petition, and that he needed to leave the premises.  Mr. Leinen was arrested for trespassing before leaving the premises; he paid the fine and returned to the Myriad that afternoon for further petitioning.  When he returned, petitioners were permitted to work outside the Myriad, after Connie Theis spoke with police about the matter.

**Exhibit 1**

Billie Nash testified that she too was asked to leave the Bricktown Ballpark area during an attempt to collect signatures on her petition. She continued her efforts elsewhere the next day.

Constance Theis testified that at the Gay Pride Parade she was asked to leave by a business owner during her attempts to collect signatures. She further indicated that the curator of the Oklahoma City Zoo told petitioners they could not approach patrons and had to stay within a designated area.

Lance Ward, Secretary of the State Election Board, testified regarding the numbers necessary in 2000 for an independent candidate to be placed on the ballot. He gave historical testimony regarding petitioning efforts by candidates and parties in past elections. He further testified that although it took his office only twenty days to verify the signatures submitted by the Libertarian, Reform and Natural Law parties on May 31, 2000, that there is a difference in the workload of county election officials this close to the run-off elections slated to be held in the coming weeks.

Plaintiffs ask the Court to determine that certain Oklahoma ballot access laws are unconstitutional, as applied to them. Specifically Plaintiffs challenge Okla. Stat. tit. 26 § 5-112 which permits an alternate route, via payment of a filing fee, for candidates seeking ballot access for all state and federal offices, except for President and Vice President. Plaintiffs contend that because the law does not permit candidate for President and Vice President this option, rather than obtaining a certain number of signatures on a petition, that the statute violates the Equal Protection Clause.

6



In *Natural Law Part v. Henley*, CIV-96-1525-R (Sept. 18, 1996), this Court addressed this exact issue, and determined the statute to be constitutional. The Court's opinion in this regard is not swayed by the evidence presented herein. Although Plaintiffs are willing to submit $1500.00 in order to secure their place on the ballot, Oklahoma law does not permit such, and as set forth in the September 18, 1996 Order in *Henley*, attached hereto, the law is constitutional. Accordingly, Plaintiffs' request for relief is denied in this regard, both for purposes of a preliminary injunction, and on the merits.

Plaintiffs also assert that Oklahoma's early filing deadline for signatures, combined with the harassment they endured in their efforts to secure signatures, renders Okla. Stat. tit. 26 § 10-101.1 unconstitutional. As determined by the United States Court of Appeals for the Tenth Circuit, and conceded by Plaintiffs in closing argument, § 10-101.1 is facially valid. *Coalition for Free and Open Elections v. McElderry*, 48 F.3d 493 (10th Cir. 1995).[3] Plaintiffs contend, however, that as applied, the statute fails to pass constitutional muster. Plaintiffs presented evidence of the alleged harassment they endured while attempting to collect signatures on their petitions in an effort to establish the unconstitutionality of § 10-101.1 as applied to them. Because of this harassment, Plaintiffs request that the Court order the State to place Mr. Nader and Ms. LaDuke on the ballot, or in the alternative, that the

---

[3] In earlier filings with the Court Plaintiffs attacked the holding in *Coalition for Free Elections*, as mere dicta. However, in that case, the court noted that in order to determine whether a particular ballot access regulation is constitutional, "a court must first review the State's overall ballot access scheme, weighing the State's interest in ballot access restrictions against the burdens those restrictions impose on voters' interests." 48 F.3d at 497. Accordingly, the court's review of the entirety of Oklahoma's ballot access laws was not mere dicta, but rather was a necessary step in the outcome of that case.

**Exhibit 1**

Court order the State to accept signatures in support of their candidates until September 1, 2000.  The Court finds that some anecdotal evidence of harassment is not sufficient to vitiate the Oklahoma statutory scheme.  The evidence presented established that on a few occasions, persons seeking signatures for their petitions were told they could not continue their efforts in that particular location.  Although Plaintiffs attempted to establish that the harassment presented substantial obstacles to their efforts, the Court disagrees.  None of the persons who testified before the Court testified that they stopped petitioning because of police had removed them from a location or told them they would have to operate elsewhere.

Furthermore, the balancing test employed by this Court in determining the constitutionality of Oklahoma's ballot access laws requires the weighing of the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justification for the burden imposed by its rule."  *Coalition for Free & Open Elections*, 48 F.d at 496 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).  In the instant action there is no evidence that the State had any involvement in the harassment Plaintiffs contend interfered with their ability to collect the requisite number of signatures.  Indeed it would be rather anomalous for the actions of a few police officers acting on their own to be the basis fo vitiating the ballot access laws for the state of Oklahoma.  Although in 1984 the Honorable Judge Lee R. West held that interference with petitioning by persons and inclement weather may be considered with regard to a petition drive, the Court disagrees

8

**Exhibit 1**

with his reliance on these factors.  *See Libertarian Party v. Oklahoma State Election Bd.*, 593 F.Supp. 118, 121-22 (W.D.Okla. 1984).[4]

For the reasons stated herein, the Court finds that Okla. Stat. tit. 26 §§ 5-216 and 10-101.1 are constitutional.  Accordingly, Plaintiffs are not entitled to preliminary injunctive relief or declaratory relief.  Judgment will be entered in favor of Defendants.

**IT IS SO ORDERED this** 30 **day of August 2000.**

DAVID L. RUSSELL
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[4] Judge West noted that "[i]n addition to the rigorous standards of the Oklahoma ballot access statutes, the plaintiffs also were not allowed to petition freely in shopping malls, campuses, or in other public areas.  The Libertarian party petitioners were not able to contact as many citizens due to the restrictions on petitioning." *Libertarian Party*, 593 F.Supp. at 121.  That case, however, was decided on undisputed facts as set forth by the plaintiffs, due to the State's failure to timely file a response to a motion for summary judgment. *Id.* at 120.

**Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NATURAL LAW PARTY of the )
United States of America; )
JOHN HAGELIN, Natural Law )
Nominee for President of the )
United States; MIKE TOMPKINS, )
Natural Law Nominee for Vice )
President of the United )
States; DANNY CORN; COLEEN )
HOUDYSHELL; JOHN A. SMIRCICH; )
ELIZABETH J. SMIRCICH; LARRY )
DON HORN; NORA JEAN NEDBALEK; )
CAROL SMIRCICH HAMLIN; and )
THOMAS NUTTER, )
                                )
        Plaintiffs,             )
                                )
v.                              )        CIV-96-1525-R
                                )
GLO HENLEY, Chairman of the     )
Oklahoma State Election Board;  )
KENNETH MONROE, Vice Chairman   )
of the Oklahoma State Election  )
Board; LANCE WARD, Secretary    )
of the Oklahoma State Election  )
Board; and MONA LAMBIRD,        )
Member of the Oklahoma State    )
Election Board; and the         )
OKLAHOMA STATE ELECTION BOARD,  )
                                )
                                )
        Defendants.             )

**F I L E D**

SEP 1 8 1996

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____, DEPUTY

**O R D E R**

Plaintiffs have moved for a temporary injunction enjoining Defendant State Election Board members from enforcing Sections 10-101.1 and 10-101.2 of Title 26 of the Oklahoma Statutes against them and ordering Defendants to place the names of Plaintiffs John Hagelin and Mike Tompkins as presidential and vice presidential candidates, respectively, along with the names of their presidential electors, who are also Plaintiffs, on the ballot for

**Exhibit 1**

Oklahoma's 1996 general election.   Because the Oklahoma State Election Board plans to order printing of the 1996 general election ballots by September 20, 1996, the parties have agreed to the disposition of this motion upon stipulated facts and briefs submitted by the parties, i.e., without an evidentiary hearing. Pursuant to that agreement, a Joint Stipulation of Facts was filed September 12, 1996; Plaintiffs' Supplemental Brief in Support of Their Motion for Preliminary Injunction was filed September 13, 1996; and Defendants' Response Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction was filed on September 16, 1996.

Although Plaintiffs in their civil rights Complaint brought pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief allege that Sections 5-112, 10-101.1 and 10-101.2 of Title 26 of the Oklahoma Statutes as applied to Plaintiffs are unconstitutional on several grounds, including the First Amendment and Due Process Clause of the Fourteenth Amendment, see Complaint at ¶ IX, Plaintiffs' argument in support of their motion for a preliminary injunction is based solely on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Plaintiffs assert that Oklahoma's provision of an alternate route to the ballot for candidates for all state and federal elective offices which are elected statewide except for President and Vice President of the United States -- that of paying a filing fee -- which is less restrictive, or easier to comply with, than obtaining the necessary number of voters' signatures on a petition to attain ballot status, and its concommitant failure to provide such an

2

**Exhibit 1**

alternative route to the ballot for Independent and nonrecognized political party candidates for President and Vice President violates the Equal Protection Clause of the United States Constitution.  Plaintiffs acknowledge that the State of Oklahoma does not have to provide the filing fee alternative to anyone who wishes to have his or her name placed on the ballot as a candidate for any office for its election laws to be constitutional.  They assert however, that since Oklahoma has provided the filing fee alternative means of access to the ballot for all other state and federal offices which are elected statewide, the State's failure to similarly provide the filing fee alternative for presidential and vice presidential candidates violates the Equal Protection Clause because the State can advance no compelling interest that makes it necessary to provide access to the ballot for Independent and nonrecognized political party candidates for President and Vice President solely by obtaining the necessary number of signatures on a petition or, conversely stated, that makes it necessary for it not to provide the filing fee alternative for such candidates.  To support their argument, Plaintiffs rely on Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); Crussel v. Oklahoma State Election Board, 497 F.Supp. 646 (W.D. Okla. 1980); and Memorandum Opinion and Order, Citizens to Establish a Reform Party in Arkansas v. Priest, No. LR-C-96-185 (E.D. Ark. July 31, 1996) (unpublished).

Defendants in response assert that the Plaintiffs have failed to establish any of the requisite elements for preliminary

3

**Exhibit 1**

injunctive relief.  Addressing the element of probable success on the merits, Defendants asserts that Oklahoma's ballot access laws in their entirety have been determined to pass constitutional muster, citing Coalition for Free and Open Elections v. McElderry, 48 F.3d 493, 500-01 (10th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 63, 133 L.Ed.2d 26 (1995) and Rainbow Coalition of Oklahoma v. Oklahoma State Election Board, 844 F.2d 740 (10th Cir. 1988) and that the correct test or standard of review to apply in assessing the constitutionality of Oklahoma's ballot access laws is not strict scrutiny but the test or standard employed by the United States Supreme Court in Burdick v. Takushi, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) and the Tenth Circuit in Coalition for Free and Open Elections v. McElderry, supra.  Defendants argue that Plaintiffs cannot show that the injunction would not be adverse to the public interest and that issuance of the injunction would be adverse to the public interest because Plaintiffs made no attempt to pursue other avenues of ballot access provided by Oklahoma laws and purposefully delayed in seeking injunctive relief.  Moreover, they assert that injunctive relief would be adverse to the public interest of having candidates on the ballot and voters cast their votes for candidates who have demonstrated some level of support. Defendants' arguments that Plaintiffs have not established the remaining two prerequisites for preliminary injunctive relief are related to or restatements of their arguments concerning the merits and the public's interest.

4

**Exhibit 1**

In order to establish their entitlement to a preliminary injunction, Plaintiffs must demonstrate that: 1) they have a substantial likelihood of prevailing on the merits; 2) they will suffer irreparable injury if the injunction is not issued; 3) the threatened injury to them outweighs whatever injury the opposing party will suffer if the injunction issues; and 4) issuance of the proposed injunction would not be adverse to the public interest. See, e.g., Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1283 (10th Cir. 1996) (citing Autoskill Inc. v. National Educational Support Systems, Inc., 994 F.2d 1476, 1487 (10th Cir.), cert. denied, 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993)). The Court concludes that Plaintiffs have failed to show that there is a substantial likelihood that they will eventually prevail on the merits and have further failed to show that issuance of the proposed preliminary injunction would not be adverse to the public interest. Accordingly, Plaintiff's motion for a preliminary injunction is denied.

Under extant Supreme Court ballot access jurisprudence, it is not clear what standard of review or scrutiny should be applied to determine whether a state's election laws which burden a minority party's or individual's candidacy as well as voters' fundamental right to vote and to associate with others for political purposes is constitutional under the Equal Protection Clause. See Burdick v. Takushi, supra (applying flexible standard articulated in Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) to determine constitutionality of state's ban on write-

**Exhibit 1**

in voting under the First and Fourteenth Amendments); <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (applying flexible approach, considering the character and magnitude of the rights protected by the First and Fourteenth Amendments that the plaintiffs seek to vindicate, and balancing or weighing those rights against the legitimacy and strength of the interests proffered by the state as justifications for the burden and considering the extent to which those interests make it necessary to burden the plaintiffs' rights to determine whether a state's candidacy restrictions placed an unconstitutional burden on voting and associational rights of the candidate's supporters); <u>Clements v. Fashing</u>, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (under "traditional equal protection principles," the "rational relationship to a legitimate state interest" standard applied to determine whether a state's constitutional provisions limiting a public official's ability to become a candidate for another public office violated the Equal Protection Clause where the burden placed on candidacy was "insignificant,"); and stating that heightened scrutiny has been applied in equal protection challenges to ballot access restrictions only when the restrictions are based on wealth or economic status or the candidate's association with a particular party) (plurality opinion); <u>Lubin v. Panish</u>, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) (applying standard of whether ballot access restriction imposed by state-law required filing fee was reasonably necessary to accomplish state's legitimate interests to determine whether filing

**Exhibit 1**

fee as applied to indigent candidate violated the Equal Protection Clause); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (applying "close scrutiny," i.e., whether state's filing fee scheme was reasonably necessary to the accomplishment of legitimate state objectives, where the scheme had a "real and appreciable impact" on the fundamental rights of voters, to determine whether scheme was constitutional under the Equal Protection Clause); Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) (applying heightened or strict scrutiny, i.e. whether restrictions on ballot access were necessary to advance a compelling state interest, to determine whether such ballot access laws, which impacted fundamental rights of association and to vote, violated the Equal Protection Clause). See also Rockefeller v. Powers, 74 F.3d 1367, 1377-78 & n. 16 (2nd Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1703, 134 L.Ed.2d 802 (1996); O'Connor v. State of Nevada, 27 F.3d 357, 360-61 (9th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995); Fulani v. Krivanek, 973 F.2d 1539, 1542-43 (11th Cir. 1992) (recognizing various tests employed by the Supreme Court in ballot access cases, generally, and in equal protection cases). The Court concludes, however, that heightened or strict scrutiny does not apply to Plaintiffs' equal protection challenge because neither the laws which Plaintiffs challenge, considered in their entirety, nor the failure to provide a filing fee alternative access to the ballot in Okla. Stat. tit. 26, §§ 10-101.1 & 10-101.2, place a significant, severe or

**Exhibit 1**

substantial burden on either presidential or vice-presidential candidates' access to the ballot or on voters' right to vote and to associate for political purposes. See Clements v. Fashing, supra; Rockefeller v. Powers, 74 F.3d at 1377 n. 16. Cf. Burdick, supra, 504 U.S. at ___, 112 S.Ct. at ___, 119 L.Ed.2d at 253 (rigorousness of inquiry into the propriety of state election laws in the First Amendment context "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights"; when those rights are subjected to "severe restrictions," the regulation must be narrowly drawn to advance a compelling state interest but when the regulation imposes only "reasonable, nondiscriminatory restrictions" upon First and Fourteenth Amendment rights of voters, a state's important regulatory interests are generally sufficient to justify the restrictions) (citations omitted).

The Tenth Circuit Court of Appeals has already determined that Okla. Stat. tit. 26, § 10.101.1 and Okla. Stat. tit. 26, § 10-101.2 "impose only reasonable burdens on . . . First and Fourteenth Amendment rights," employing the balancing test set forth in Anderson v. Celebrezze, supra. In the First Amendment context, the Supreme Court has said that "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights . . . a prohibition on write-in voting will be presumptively valid." Burdick, 504 U.S. at ___, 112 S.Ct. at 2967, 119 L.Ed.2d at 258. Since write-in voting, like the proposed filing fee requirement, is an alternative avenue of ballot access to the signature petition requirement, and the same

8

**Exhibit 1**

interests of potential candidates and voters are implicated in this equal protection challenge as are implicated in a First Amendment challenge, the Court is of the opinion that it is reasonable to apply the Burdick presumption to Oklahoma's failure to provide a filing fee alternative means of ballot access in Sections 10-101.1 and 10-101.2 similar to that in Section 5-112.  Plaintiffs have failed to show, at this juncture, that their interests in having their names placed on the ballot in Oklahoma and/or to vote for the persons of their choosing and associate politically through the vote, when they have not even attempted to pursue other available avenues to have their names placed on the ballot, is strong enough to overcome a presumption of validity afforded under Burdick.  See Coalition for Free and Open Elections v. McElderry, 48 F.3d at 500-501.  Plaintiffs, like the Plaintiffs in Coalition for Free and Open Elections, argue that Oklahoma's interest in regulating a Presidential election is less than its interest in regulating other statewide elections.  While this is true, Plaintiffs' interest in a filing fee alternative form of ballot access is less in the context of a Presidential election and Oklahoma's concomitant interest in not providing a filing fee alternative is greater because the percentage of voters' signatures required to obtain a place on the ballot by petition is less for presidential and vice-presidential candidates than it is for other federal offices and state offices, compare Okla. Stat. tit. 26, §§ 10-101.1 & 10-101.2 with Okla. Stat. tit. 26, § 5-112; because Oklahoma has an important state interest in insuring that candidates whose names

**Exhibit 1**

are placed on the ballot demonstrate same modicum of support, an interest which a filing fee would not serve to advance or protect, see Bullock v. Carter, supra; Lubin v. Panish, supra; see also Rainbow Coalition v. Oklahoma State Election Board, 844 F.2d at 743 (citation omitted), as well as the same interests which the State articulated in Coalition for Free & Open Elections v. McElderry, see 48 F.3d at 499; because there is an extreme likelihood that an individual who cannot garner the necessary 3% of registered voters' signatures on a petition, see Okla. Stat. tit. 26, §§ 10.101.1 & 10.101.2, could be successful in Oklahoma, which requires all of its Presidential electors to cast their votes for the plurality winner in the general election, see Coalition for Free & Open Elections v. McElderry, 48 F.3d at 501 & n. 9; and because Oklahoma has a greater interest in having voters use their votes for viable candidates who have exhibited some degree of support through the ballot access process in Presidential elections because it requires that all of its Presidential electors cast their votes for the plurality winner in the general election.  Id.

The Tenth Circuit has already concluded that in evaluating an equal protection challenge to a ballot access restriction, neither a compelling state interest nor the least restrictive means available to achieve that end is necessary for the ballot access law to pass constitutional muster.  Rainbow Coalition, supra, 844 F.2d at 743.  Rather, the Tenth Circuit has determined that the appropriate test to apply when ballot access laws are challenged under the Equal Protection Clause is the balancing test set forth

10

**Exhibit 1**

in <u>Anderson v. Celebrezze</u>, 460 U.S. at 789, 103 S.Ct. at 1570, 75 L.Ed.2d at 547.  <u>Id</u>.  The ballot access laws challenged herein, without consideration of the proposed alternative avenue of achieving ballot access by paying a filing fee, have already been determined to be constitutional under that test, applied in the First Amendment context, in <u>Coalition for Free and Open Elections v. McElderry</u>, <u>supra</u>.  Because Oklahoma's level of support requirements for ballot access for presidential and vice-presidential candidates are reasonable and do not unnecessarily burden voters' fundamental rights, considering the character and magnitude of the asserted injury to their First and Fourteenth Amendment rights, and the interests already proffered by the State in <u>Rainbow</u> and <u>Coalition</u> as justifications for the burden imposed, the legitimacy and strength of those interests and the extent to which those interests make it necessary to burden those rights, <u>see</u> <u>Coalition for Free and Open Elections v. McElderry</u>, <u>supra</u>, the Court does not see how the failure to provide some alternative means of ballot access can render the constitutional burden imposed on voters' rights by the signature petition requirement an unconstitutional burden and is of the opinion that it cannot. Under traditional equal protection analysis, Oklahoma's ballot access scheme in Okla. Stat. tit. 26, §§ 10.101.1 & 10.101.2 is not rendered unconstitutional simply because it could have but chose not to provide an additional alternative mode of ballot access which, while less restrictive, would not be as effectual in achieving the desired ends. <u>See</u> <u>Clements v. Fashing</u>, 457 U.S. 957,

11

# Exhibit 1

968-69, 102 S.Ct. 2836, ___, 73 L.Ed.2d 508, 519 (1982).  See also
Lubin v. Panish, 415 U.S. at 717, 94 S.Ct. at ___, 39 L.Ed.2d at
709; Bullock v. Carter, 405 U.S. at 145-46, 92 S.Ct. at ___, 31
L.Ed.2d at 100-101.

Finally, the ballot access laws being challenged herein do not
involve classifications based upon wealth or economic status nor do
they impose special burdens on independent, minority or
nonrecognized political party candidates for Presidential elections
because of such affiliation or non-affiliation.  Compare with
Clements v. Fashing, 457 U.S. at 963-966, 102 S.Ct. at ___, 73
L.Ed.2d at 517.  Accordingly, heightened or strict scrutiny does
not apply, and the "restrictions" on Independents' and
nonrecognized political parties' candidates based upon a
classification of providing a filing fee alternate mode of ballot
access to candidates for state and other federal offices while not
providing a similar alternate mode of ballot access to candidates
for President and Vice President survives an equal protection
challenge unless the Plaintiffs "can show that there is no rational
predicate to the classification scheme." Clements v. Fashing, 457
U.S. at 970, 102 S.Ct. at ___, 73 L.Ed.2d at 520.  Plaintiffs
herein have not even attempted to show, much less shown, that there
is no rational basis for providing an alternative route to the
ballot, by paying a filing fee, for candidates for State and
Congressional office and for not providing such an alternative mode
of ballot access for presidential and vice presidential candidates,
nor that there is a substantial likelihood that Plaintiffs can show

12

**Exhibit 1**

the absence of any rational predicate.  Indeed, the Court concludes that it is unlikely that Plaintiffs could show the absence of a rational basis.  The State of Oklahoma may well have chosen to actively encourage the number of candidates for state and Congressional offices on the ballot in Oklahoma by including the filing fee alternative without in any fashion abandoning or denigrating its interest in having as candidates on the ballot in Presidential elections, and having its voters use their votes in such elections, viable candidates who have demonstrated some modicum of support, particularly since Oklahoma requires all of its Presidential electors to cast their votes for the plurality winner in the general election.  Oklahoma may have chosen to ameliorate the burden placed on candidacy for state and Congressional offices by the higher 5% signature petition requirement, see Okla. Stat. tit. 26, § 5-112, by providing the alternative of paying a filing fee, and its failure to provide such a filing fee alternative to potential presidential and vice-presidential candidates would not be irrational, given the lower, 3% signature petition requirement for those candidates.  See Okla. Stat. tit. 26, §§ 10-101.1 & 10-101.2.  Or, conversely, Oklahoma may have added the signature petition requirement in Okla. Stat. tit. 26, 5-112, as an alternative to the filing fee route to the ballot to avoid constitutional infirmity posed by the filing fee requirement as applied to indigent candidates.  In Clements v. Fashing, Justice Rehnquist, writing for the plurality (Justice Stevens concurring in the judgment) said:

13

**Exhibit 1**

It would indeed be a perversion of the Equal Protection Clause were we to conclude that Texas must restrict a Justice of the Peace's candidacy for all offices before it can restrict a Justice of the Peace's candidacy for <u>any</u> office.

. . . .

The Equal Protection Clause does not forbid Texas to restrict one elected officeholder's candidacy for another elected office unless and until it places similar restrictions on other officeholders.

> <u>Clements v. Fashing</u>, 457 U.S. at 970 & 971, 102 S.Ct. at ___, 73 L.Ed.2d at 520 & 521 (citations omitted) (plurality opinion, J. Stevens, concurring in part and in the judgment).

The Court is of the opinion that similarly it would be a perversion of the Equal Protection Clause if the State of Oklahoma could not provide an alternate form of ballot access for candidates for some offices unless and until it provides such alternative avenue for candidates for all political offices, or if the State of Oklahoma could not fail to provide an alternative to the signature petition requirement for candidates for President and Vice-President unless it chose not to provide such an alternative to candidates for any or all other public offices.  In the final analysis this may be but another way of saying that potential Independent and nonrecognized political party candidates for President and Vice President are not similarly situated to candidates for state and Congressional offices for purposes of the Equal Protection Clause.  <u>See</u> <u>Clements v. Fashing</u>, 457 U.S. at 975-76, 102 S.Ct. at ___, 73 L.Ed.2d at 523-24 (Stevens, J., concurring in part and concurring in judgment).  <u>See also</u> <u>Libertarian Party of</u>

14

**Exhibit 1**

<u>Maine v. Diamond</u>, 992 F.2d 365, 370 (1st Cir. 1993) (where ballot access restrictions fall unequally on similarly situated parties or candidates, the Fourteenth Amendment right to equal protection may be threatened), <u>cert</u>. <u>denied</u>, 510 U.S. 917, 114 S.Ct. 310, 126 L.Ed.2d 257 (1993).

In summary, a heightened or strict scrutiny standard of review does not apply to Plaintiffs' equal protection challenge to burdens imposed upon Plaintiffs' candidacy, voting and associational rights by Oklahoma's ballot access provisions. Under any test or standard of review which might properly be employed to evaluate Plaintiffs' equal protection challenge, Plaintiffs have failed to show that there is a substantial likelihood that the Oklahoma laws in question violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or that they will ultimately succeed on the merits on their claims that the laws in question are unconstitutional on that basis or on any other basis.

Moreover, the Court concludes that Plaintiffs have failed to demonstrate that issuance of the injunction they seek would not be adverse to the public interest. Plaintiffs have not shown that they have attempted to pursue other avenues of access to Oklahoma's ballot for the Presidential election available under Oklahoma laws and that they were unable to obtain access in any manner so provided. Oklahoma has an interest in operating its elections fairly and efficiently. To permit the Plaintiffs to effectively flout Oklahoma laws prescribing methods of ballot access with which all other Presidential candidates on the 1996 Oklahoma general

**Exhibit 1**

election ballot had to comply is contrary to the public interest. Many of the public interests identified in <u>Coalition for Free and Open Elections v. McElderry</u>, 48 F.3d at 499 (discouraging unrestrained factionalism, limiting the general election to recognized parties and parties and candidates that are well supported as evidenced by their ability to meet the signature requirements, focusing voters on major issues and candidates and winnowing out chosen candidates rather than providing a forum to vent short-range political goals) would be disserved by issuance of the injunction sought and permitting Plaintiff candidates' and electors' names to be placed on the ballot at this late date, particularly in the face of their failure to show that they attempted to have their names placed on the ballot by pursuing other statorily-provided avenues and what appears to be their purposeful delay or chosen strategy of making this constitutional challenge at this late date.

In view of this Court's conclusions that Plaintiffs have failed to establish their substantial likelihood of ultimately prevailing on the merits and that issuance of the injunction would not be adverse to the public interest, the Court finds it unnecessary to address whether Plaintiffs have made the necessary showing with respect to the remaining two requirements for the issuance of a preliminary injunction.

Plaintiffs' motion for a preliminary injunction is **DENIED**.

**Exhibit 1**

IT IS SO ORDERED this _18th_ day of September, 1996.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

**Exhibit 1**