## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

NATURAL LAW PARTY of the )
United States of America; )
JOHN HAGELIN, Natural Law )
Nominee for President of the )
United States; MIKE TOMPKINS, )
Natural Law Nominee for Vice )
President of the United )
States; DANNY CORN; COLEEN )
HOUDYSHELL; JOHN A. SMIRCICH; )
ELIZABETH J. SMIRCICH; LARRY )
DON HORN; NORA JEAN NEDBALEK; )
CAROL SMIRCICH HAMLIN; and )
THOMAS NUTTER, )
                     )
     Plaintiffs, )
                     )
v. )     **CIV-96-1525-R**
                     )
GLO HENLEY, Chairman of the )
Oklahoma State Election Board;)
KENNETH MONROE, Vice Chairman )
of the Oklahoma State Election)
Board; LANCE WARD, Secretary )
of the Oklahoma State Election)
Board; and MONA LAMBIRD, )
Member of the Oklahoma State )
Election Board; and the )
OKLAHOMA STATE ELECTION BOARD,)
                     )
     Defendants. )

**FILED**

SEP 1 8 1996

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____, DEPUTY

## O R D E R

Plaintiffs have moved for a temporary injunction enjoining Defendant State Election Board members from enforcing Sections 10-101.1 and 10-101.2 of Title 26 of the Oklahoma Statutes against them and ordering Defendants to place the names of Plaintiffs John Hagelin and Mike Tompkins as presidential and vice presidential candidates, respectively, along with the names of their presidential electors, who are also Plaintiffs, on the ballot for

# Exhibit 2

Oklahoma's 1996 general election.    Because the Oklahoma State Election Board plans to order printing of the 1996 general election ballots by September 20, 1996, the parties have agreed to the disposition of this motion upon stipulated facts and briefs submitted by the parties, i.e., without an evidentiary hearing. Pursuant to that agreement, a Joint Stipulation of Facts was filed September 12, 1996; Plaintiffs' Supplemental Brief in Support of Their Motion for Preliminary Injunction was filed September 13, 1996; and Defendants' Response Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction was filed on September 16, 1996.

Although Plaintiffs in their civil rights Complaint brought pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief allege that Sections 5-112, 10-101.1 and 10-101.2 of Title 26 of the Oklahoma Statutes as applied to Plaintiffs are unconstitutional on several grounds, including the First Amendment and Due Process Clause of the Fourteenth Amendment, see Complaint at ¶ IX, Plaintiffs' argument in support of their motion for a preliminary injunction is based solely on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs assert that Oklahoma's provision of an alternate route to the ballot for candidates for all state and federal elective offices which are elected statewide except for President and Vice President of the United States -- that of paying a filing fee -- which is less restrictive, or easier to comply with, than obtaining the necessary number of voters' signatures on a petition to attain ballot status, and its concommitant failure to provide such an

2

**Exhibit 2**

alternative route to the ballot for Independent and nonrecognized political party candidates for President and Vice President violates the Equal Protection Clause of the United States Constitution. Plaintiffs acknowledge that the State of Oklahoma does not have to provide the filing fee alternative to anyone who wishes to have his or her name placed on the ballot as a candidate for any office for its election laws to be constitutional. They assert however, that since Oklahoma has provided the filing fee alternative means of access to the ballot for all other state and federal offices which are elected statewide, the State's failure to similarly provide the filing fee alternative for presidential and vice presidential candidates violates the Equal Protection Clause because the State can advance no compelling interest that makes it necessary to provide access to the ballot for Independent and nonrecognized political party candidates for President and Vice President solely by obtaining the necessary number of signatures on a petition or, conversely stated, that makes it necessary for it not to provide the filing fee alternative for such candidates. To support their argument, Plaintiffs rely on Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); Crussel v. Oklahoma State Election Board, 497 F.Supp. 646 (W.D. Okla. 1980); and Memorandum Opinion and Order, Citizens to Establish a Reform Party in Arkansas v. Priest, No. LR-C-96-185 (E.D. Ark. July 31, 1996) (unpublished).

Defendants in response assert that the Plaintiffs have failed to establish any of the requisite elements for preliminary

3

**Exhibit 2**

injunctive relief.  Addressing the element of probable success on the merits, Defendants asserts that Oklahoma's ballot access laws in their entirety have been determined to pass constitutional muster, citing Coalition for Free and Open Elections v. McElderry, 48 F.3d 493, 500-01 (10th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 63, 133 L.Ed.2d 26 (1995) and Rainbow Coalition of Oklahoma v. Oklahoma State Election Board, 844 F.2d 740 (10th Cir. 1988) and that the correct test or standard of review to apply in assessing the constitutionality of Oklahoma's ballot access laws is not strict scrutiny but the test or standard employed by the United States Supreme Court in Burdick v. Takushi, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) and the Tenth Circuit in Coalition for Free and Open Elections v. McElderry, supra.  Defendants argue that Plaintiffs cannot show that the injunction would not be adverse to the public interest and that issuance of the injunction would be adverse to the public interest because Plaintiffs made no attempt to pursue other avenues of ballot access provided by Oklahoma laws and purposefully delayed in seeking injunctive relief.  Moreover, they assert that injunctive relief would be adverse to the public interest of having candidates on the ballot and voters cast their votes for candidates who have demonstrated some level of support. Defendants' arguments that Plaintiffs have not established the remaining two prerequisites for preliminary injunctive relief are related to or restatements of their arguments concerning the merits and the public's interest.

4

**Exhibit 2**

In order to establish their entitlement to a preliminary
injunction, Plaintiffs must demonstrate that: 1) they have a
substantial likelihood of prevailing on the merits; 2) they will
suffer irreparable injury if the injunction is not issued; 3) the
threatened injury to them outweighs whatever injury the opposing
party will suffer if the injunction issues; and 4) issuance of the
proposed injunction would not be adverse to the public interest.
See, e.g., Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d
1280, 1283 (10th Cir. 1996) (citing Autoskill Inc. v. National
Educational Support Systems, Inc., 994 F.2d 1476, 1487 (10th Cir.),
cert. denied, 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993)).
The Court concludes that Plaintiffs have failed to show that there
is a substantial likelihood that they will eventually prevail on
the merits and have further failed to show that issuance of the
proposed preliminary injunction would not be adverse to the public
interest.   Accordingly, Plaintiff's motion for a preliminary
injunction is denied.

Under extant Supreme Court ballot access jurisprudence, it is
not clear what standard of review or scrutiny should be applied to
determine whether a state's election laws which burden a minority
party's or individual's candidacy as well as voters' fundamental
right to vote and to associate with others for political purposes
is constitutional under the Equal Protection Clause.   See Burdick
v. Takushi, supra (applying flexible standard articulated in
Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d
547 (1983) to determine constitutionality of state's ban on write-

5

**Exhibit 2**

in voting under the First and Fourteenth Amendments); Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (applying flexible approach, considering the character and magnitude of the rights protected by the First and Fourteenth Amendments that the plaintiffs seek to vindicate, and balancing or weighing those rights against the legitimacy and strength of the interests proffered by the state as justifications for the burden and considering the extent to which those interests make it necessary to burden the plaintiffs' rights to determine whether a state's candidacy restrictions placed an unconstitutional burden on voting and associational rights of the candidate's supporters); Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (under "traditional equal protection principles," the "rational relationship to a legitimate state interest" standard applied to determine whether a state's constitutional provisions limiting a public official's ability to become a candidate for another public office violated the Equal Protection Clause where the burden placed on candidacy was "insignificant,"); and stating that heightened scrutiny has been applied in equal protection challenges to ballot access restrictions only when the restrictions are based on wealth or economic status or the candidate's association with a particular party) (plurality opinion); Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) (applying standard of whether ballot access restriction imposed by state-law required filing fee was reasonably necessary to accomplish state's legitimate interests to determine whether filing

**Exhibit 2**

fee as applied to indigent candidate violated the Equal Protection Clause); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (applying "close scrutiny," i.e., whether state's filing fee scheme was reasonably necessary to the accomplishment of legitimate state objectives, where the scheme had a "real and appreciable impact" on the fundamental rights of voters, to determine whether scheme was constitutional under the Equal Protection Clause); Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) (applying heightened or strict scrutiny, i.e. whether restrictions on ballot access were necessary to advance a compelling state interest, to determine whether such ballot access laws, which impacted fundamental rights of association and to vote, violated the Equal Protection Clause). See also Rockefeller v. Powers, 74 F.3d 1367, 1377-78 & n. 16 (2nd Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1703, 134 L.Ed.2d 802 (1996); O'Connor v. State of Nevada, 27 F.3d 357, 360-61 (9th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995); Fulani v. Krivanek, 973 F.2d 1539, 1542-43 (11th Cir. 1992) (recognizing various tests employed by the Supreme Court in ballot access cases, generally, and in equal protection cases). The Court concludes, however, that heightened or strict scrutiny does not apply to Plaintiffs' equal protection challenge because neither the laws which Plaintiffs challenge, considered in their entirety, nor the failure to provide a filing fee alternative access to the ballot in Okla. Stat. tit. 26, §§ 10-101.1 & 10-101.2, place a significant, severe or

**Exhibit 2**

substantial burden on either presidential or vice-presidential candidates' access to the ballot or on voters' right to vote and to associate for political purposes.  See Clements v. Fashing, supra; Rockefeller v. Powers, 74 F.3d at 1377 n. 16.  Cf. Burdick, supra, 504 U.S. at ___, 112 S.Ct. at ___, 119 L.Ed.2d at 253 (rigorousness of inquiry into the propriety of state election laws in the First Amendment context "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights"; when those rights are subjected to "severe restrictions," the regulation must be narrowly drawn to advance a compelling state interest but when the regulation imposes only "reasonable, nondiscriminatory restrictions" upon First and Fourteenth Amendment rights of voters, a state's important regulatory interests are generally sufficient to justify the restrictions) (citations omitted).

The Tenth Circuit Court of Appeals has already determined that Okla. Stat. tit. 26, § 10.101.1 and Okla. Stat. tit. 26, § 10-101.2 "impose only reasonable burdens on . . . First and Fourteenth Amendment rights," employing the balancing test set forth in Anderson v. Celebrezze, supra.  In the First Amendment context, the Supreme Court has said that "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights . . . a prohibition on write-in voting will be presumptively valid."  Burdick, 504 U.S. at ___, 112 S.Ct. at 2967, 119 L.Ed.2d at 258.  Since write-in voting, like the proposed filing fee requirement, is an alternative avenue of ballot access to the signature petition requirement, and the same

**Exhibit 2**

interests of potential candidates and voters are implicated in this equal protection challenge as are implicated in a First Amendment challenge, the Court is of the opinion that it is reasonable to apply the Burdick presumption to Oklahoma's failure to provide a filing fee alternative means of ballot access in Sections 10-101.1 and 10-101.2 similar to that in Section 5-112.  Plaintiffs have failed to show, at this juncture, that their interests in having their names placed on the ballot in Oklahoma and/or to vote for the persons of their choosing and associate politically through the vote, when they have not even attempted to pursue other available avenues to have their names placed on the ballot, is strong enough to overcome a presumption of validity afforded under Burdick.  See Coalition for Free and Open Elections v. McElderry, 48 F.3d at 500-501.  Plaintiffs, like the Plaintiffs in Coalition for Free and Open Elections, argue that Oklahoma's interest in regulating a Presidential election is less than its interest in regulating other statewide elections.  While this is true, Plaintiffs' interest in a filing fee alternative form of ballot access is less in the context of a Presidential election and Oklahoma's concomitant interest in not providing a filing fee alternative is greater because the percentage of voters' signatures required to obtain a place on the ballot by petition is less for presidential and vice-presidential candidates than it is for other federal offices and state offices, compare Okla. Stat. tit. 26, §§ 10-101.1 & 10-101.2 with Okla. Stat. tit. 26, § 5-112; because Oklahoma has an important state interest in insuring that candidates whose names

**Exhibit 2**

are placed on the ballot demonstrate same modicum of support, an
interest which a filing fee would not serve to advance or protect,
see Bullock v. Carter, supra; Lubin v. Panish, supra; see also
Rainbow Coalition v. Oklahoma State Election Board, 844 F.2d at 743
(citation omitted), as well as the same interests which the State
articulated in Coalition for Free & Open Elections v. McElderry,
see 48 F.3d at 499; because there is an extreme likelihood that an
individual who cannot garner the necessary 3% of registered voters'
signatures on a petition, see Okla. Stat. tit. 26, §§ 10.101.1 &
10.101.2, could be successful in Oklahoma, which requires all of
its Presidential electors to cast their votes for the plurality
winner in the general election, see Coalition for Free & Open
Elections v. McElderry, 48 F.3d at 501 & n. 9; and because Oklahoma
has a greater interest in having voters use their votes for viable
candidates who have exhibited some degree of support through the
ballot access process in Presidential elections because it requires
that all of its Presidential electors cast their votes for the
plurality winner in the general election.  Id.

The Tenth Circuit has already concluded that in evaluating an
equal protection challenge to a ballot access restriction, neither
a compelling state interest nor the least restrictive means
available to achieve that end is necessary for the ballot access
law to pass constitutional muster.  Rainbow Coalition, supra, 844
F.2d at 743.  Rather, the Tenth Circuit has determined that the
appropriate test to apply when ballot access laws are challenged
under the Equal Protection Clause is the balancing test set forth

10

**Exhibit 2**

in Anderson v. Celebrezze, 460 U.S. at 789, 103 S.Ct. at 1570, 75 L.Ed.2d at 547.   Id.   The ballot access laws challenged herein, without consideration of the proposed alternative avenue of achieving ballot access by paying a filing fee, have already been determined to be constitutional under that test, applied in the First Amendment context, in Coalition for Free and Open Elections v. McElderry, supra.   Because Oklahoma's level of support requirements for ballot access for presidential and vice-presidential candidates are reasonable and do not unnecessarily burden voters' fundamental rights, considering the character and magnitude of the asserted injury to their First and Fourteenth Amendment rights, and the interests already proffered by the State in Rainbow and Coalition as justifications for the burden imposed, the legitimacy and strength of those interests and the extent to which those interests make it necessary to burden those rights, see Coalition for Free and Open Elections v. McElderry, supra, the Court does not see how the failure to provide some alternative means of ballot access can render the constitutional burden imposed on voters' rights by the signature petition requirement an unconstitutional burden and is of the opinion that it cannot. Under traditional equal protection analysis, Oklahoma's ballot access scheme in Okla. Stat. tit. 26, §§ 10.101.1 & 10.101.2 is not rendered unconstitutional simply because it could have but chose not to provide an additional alternative mode of ballot access which, while less restrictive, would not be as effectual in achieving the desired ends. See Clements v. Fashing, 457 U.S. 957,

**Exhibit 2**

968-69, 102 S.Ct. 2836, ___, 73 L.Ed.2d 508, 519 (1982).  See also
Lubin v. Panish, 415 U.S. at 717, 94 S.Ct. at ___, 39 L.Ed.2d at
709; Bullock v. Carter, 405 U.S. at 145-46, 92 S.Ct. at ___, 31
L.Ed.2d at 100-101.

Finally, the ballot access laws being challenged herein do not
involve classifications based upon wealth or economic status nor do
they impose special burdens on independent, minority or
nonrecognized political party candidates for Presidential elections
because of such affiliation or non-affiliation.  Compare with
Clements v. Fashing, 457 U.S. at 963-966, 102 S.Ct. at ___, 73
L.Ed.2d at 517.  Accordingly, heightened or strict scrutiny does
not apply, and the "restrictions" on Independents' and
nonrecognized political parties' candidates based upon a
classification of providing a filing fee alternate mode of ballot
access to candidates for state and other federal offices while not
providing a similar alternate mode of ballot access to candidates
for President and Vice President survives an equal protection
challenge unless the Plaintiffs "can show that there is no rational
predicate to the classification scheme." Clements v. Fashing, 457
U.S. at 970, 102 S.Ct. at ___, 73 L.Ed.2d at 520.  Plaintiffs
herein have not even attempted to show, much less shown, that there
is no rational basis for providing an alternative route to the
ballot, by paying a filing fee, for candidates for State and
Congressional office and for not providing such an alternative mode
of ballot access for presidential and vice presidential candidates,
nor that there is a substantial likelihood that Plaintiffs can show

12

**Exhibit 2**

the absence of any rational predicate.  Indeed, the Court concludes
that it is unlikely that Plaintiffs could show the absence of a
rational basis.  The State of Oklahoma may well have chosen to
actively encourage the number of candidates for state and
Congressional offices on the ballot in Oklahoma by including the
filing fee alternative without in any fashion abandoning or
denigrating its interest in having as candidates on the ballot in
Presidential elections, and having its voters use their votes in
such elections, viable candidates who have demonstrated some
modicum of support, particularly since Oklahoma requires all of its
Presidential electors to cast their votes for the plurality winner
in the general election.  Oklahoma may have chosen to ameliorate
the burden placed on candidacy for state and Congressional offices
by the higher 5% signature petition requirement, <u>see</u> Okla. Stat.
tit. 26, § 5-112, by providing the alternative of paying a filing
fee, and its failure to provide such a filing fee alternative to
potential presidential and vice-presidential candidates would not
be irrational, given the lower, 3% signature petition requirement
for those candidates.  <u>See</u> Okla. Stat. tit. 26, §§ 10-101.1 & 10-
101.2.  Or, conversely, Oklahoma may have added the signature
petition requirement in Okla. Stat. tit. 26, 5-112, as an
alternative to the filing fee route to the ballot to avoid
constitutional infirmity posed by the filing fee requirement as
applied to indigent candidates.  In <u>Clements v. Fashing</u>, Justice
Rehnquist, writing for the plurality (Justice Stevens concurring in
the judgment) said:

13

**Exhibit 2**

It would indeed be a perversion of the Equal Protection Clause were we to conclude that Texas must restrict a Justice of the Peace's candidacy for all offices before it can restrict a Justice of the Peace's candidacy for <u>any</u> office.

. . . .

The Equal Protection Clause does not forbid Texas to restrict one elected officeholder's candidacy for another elected office unless and until it places similar restrictions on other officeholders.

> <u>Clements v. Fashing</u>, 457 U.S. at 970 & 971, 102 S.Ct. at ___, 73 L.Ed.2d at 520 & 521 (citations omitted) (plurality opinion, J. Stevens, concurring in part and in the judgment).

The Court is of the opinion that similarly it would be a perversion of the Equal Protection Clause if the State of Oklahoma could not provide an alternate form of ballot access for candidates for some offices unless and until it provides such alternative avenue for candidates for all political offices, or if the State of Oklahoma could not fail to provide an alternative to the signature petition requirement for candidates for President and Vice-President unless it chose not to provide such an alternative to candidates for any or all other public offices. In the final analysis this may be but another way of saying that potential Independent and nonrecognized political party candidates for President and Vice President are not similarly situated to candidates for state and Congressional offices for purposes of the Equal Protection Clause. <u>See</u> <u>Clements v. Fashing</u>, 457 U.S. at 975-76, 102 S.Ct. at ___, 73 L.Ed.2d at 523-24 (Stevens, J., concurring in part and concurring in judgment). <u>See also</u> <u>Libertarian Party of</u>

14

**Exhibit 2**

<u>Maine v. Diamond</u>, 992 F.2d 365, 370 (1st Cir. 1993) (where ballot access restrictions fall unequally on similarly situated parties or candidates, the Fourteenth Amendment right to equal protection may be threatened), <u>cert</u>. <u>denied</u>, 510 U.S. 917, 114 S.Ct. 310, 126 L.Ed.2d 257 (1993).

In summary, a heightened or strict scrutiny standard of review does not apply to Plaintiffs' equal protection challenge to burdens imposed upon Plaintiffs' candidacy, voting and associational rights by Oklahoma's ballot access provisions. Under any test or standard of review which might properly be employed to evaluate Plaintiffs' equal protection challenge, Plaintiffs have failed to show that there is a substantial likelihood that the Oklahoma laws in question violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or that they will ultimately succeed on the merits on their claims that the laws in question are unconstitutional on that basis or on any other basis.

Moreover, the Court concludes that Plaintiffs have failed to demonstrate that issuance of the injunction they seek would not be adverse to the public interest. Plaintiffs have not shown that they have attempted to pursue other avenues of access to Oklahoma's ballot for the Presidential election available under Oklahoma laws and that they were unable to obtain access in any manner so provided. Oklahoma has an interest in operating its elections fairly and efficiently. To permit the Plaintiffs to effectively flout Oklahoma laws prescribing methods of ballot access with which all other Presidential candidates on the 1996 Oklahoma general

**Exhibit 2**

election ballot had to comply is contrary to the public interest. Many of the public interests identified in <u>Coalition for Free and Open Elections v. McElderry</u>, 48 F.3d at 499 (discouraging unrestrained factionalism, limiting the general election to recognized parties and parties and candidates that are well supported as evidenced by their ability to meet the signature requirements, focusing voters on major issues and candidates and winnowing out chosen candidates rather than providing a forum to vent short-range political goals) would be disserved by issuance of the injunction sought and permitting Plaintiff candidates' and electors' names to be placed on the ballot at this late date, particularly in the face of their failure to show that they attempted to have their names placed on the ballot by pursuing other statorily-provided avenues and what appears to be their purposeful delay or chosen strategy of making this constitutional challenge at this late date.

In view of this Court's conclusions that Plaintiffs have failed to establish their substantial likelihood of ultimately prevailing on the merits and that issuance of the injunction would not be adverse to the public interest, the Court finds it unnecessary to address whether Plaintiffs have made the necessary showing with respect to the remaining two requirements for the issuance of a preliminary injunction.

Plaintiffs' motion for a preliminary injunction is **DENIED**.

**Exhibit 2**

IT IS SO ORDERED this _18th_ day of September, 1996.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

**Exhibit 2**