IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BOB BARR, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | No. CIV-08-730-R |
| ) | |
| **PAUL ZIRIAX, Secretary** ) | |
| **of the Oklahoma State Election** ) | |
| **Board, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

Plaintiffs filed this action challenging Oklahoma's election laws regarding access to the ballot for candidates not affiliated with either of the two major political parties. Plaintiff Bob Barr is a former Libertarian party presidential candidate. Plaintiff Wayne Root was his running mate. Plaintiff Barr alleges that he was unable to gather the necessary number of signatures to place his name on the ballot for the 2008 presidential election as an independent candidate. He contends that the signature requirement in Oklahoma is overly burdensome and as a result violates the United States Constitution. Plaintiffs further assert that Oklahoma's ballot access laws violate the Equal Protection Clause of the Constitution because candidates for office other than president are permitted to pay a filing fee in lieu of collecting signatures. According to the Plaintiffs this disparate treatment renders the Oklahoma statute constitutionally infirm. Defendants seek summary judgment on Plaintiffs' claims, asserting that the constitutionality of Oklahoma's ballot access laws has been previously decided by both this Court and the by United States Court of Appeals for the Tenth Circuit.

**Exhibit 3**

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir.1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir.1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587.

Exhibit 3

## DISCUSSION

The following facts are undisputed:

Bob Barr was the presidential candidate for the Libertarian Party in the year 2008. Wayne Root was the vice presidential candidate for the party in 2008. The remaining Plaintiffs are officers of the Libertarian Political Organization in Oklahoma and were willing to serve as presidential electors in Oklahoma for Plaintiffs Barr and Root. Plaintiffs Barr and Root sought to have their names placed on the Oklahoma ballot as independent candidates for the 2008 presidential election. Under Oklahoma law, an independent candidate for president must collect signatures of registered voters totaling 3% of the number of people who voted in the last presidential election. In 2008, the number of signatures needed to gain for access to Oklahoma's ballot was 43,913.

On May 12, 2008, Bob Barr announced his intention to seek the Libertarian Party's nomination for president. On July 15, 2008, Plaintiffs filed their petition with the Secretary of the Oklahoma State Election Board. The petition contained 9,488 signatures total, the equivalent of .6% of Oklahoma voters in the 2004 presidential election. Because presidential candidates do not have the option of paying the filing fee to obtain ballot access, Plaintiff Barr was required to present signatures equaling 3% of the votes in the 2004 Oklahoma election, and because he had not done so his name did not appear on the 2008 ballot for president in Oklahoma. Oklahoma voters did not have the option of voting for Plaintiff Barr because Oklahoma law precludes write-in voting. Okla. Stat. tit. 7 § 7-127(1).[1]

---

[1] Plaintiffs contend that there is a disputed issue of fact because an amendment to Oklahoma law now requires that a political party seeking recognition on a ballot must submit its petition not later than May 1 of
(continued...)



Defendants first assert that Plaintiffs lack standing to seek review of Oklahoma's ballot access laws, asserting that their most recent petition numbers were insufficient to qualify under most standards set forth by states with ballot access laws. Defendants contend that even if the Court were to require Oklahoma to re-write its laws to reduce the number of signatures needed to gain access to the ballot to 1% of the votes cast in the 2004 presidential election, that Plaintiff Barr would not have succeeded in gaining ballot access. The Court disagrees that this equation forms the basis of Plaintiffs' standing.

If the Court finds that Oklahoma's ballot access laws are unconstitutional the remedy would be declaration of unconstitutionality, and it would be the State's prerogative to enact new legislation that could withstand constitutional scrutiny. The fact that Plaintiffs could not have complied with other states' more lenient ballot standards does not deprive the Plaintiffs in this case of standing. Plaintiffs assert that because of the stringent access requirements, which they contend are unconstitutional, that they were injured. They have sufficiently alleged standing to challenge the laws.

Defendants next seek summary judgment on the merits of Plaintiffs' claims. Defendants correctly note that the statute at issue herein have previously survived scrutiny. *See Coalition for Free and Open Elections v. McElderry*, 48 F.3d 493 (10th Cir. 1995). Therein the Tenth Circuit was called upon to consider the constitutionality of Oklahoma's

---

[1](...continued)
an election year, rather than the prior deadline of May 31. Plaintiffs, however, noted in their response to the motion that this statute, Okla. Stat. tit. 26 § 1-108 is not at issue in this action. Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, p. 15 n 1 ("Okla. Stat. tit. 26, § 1-108 is not at issue in the case at bar, but does constitute an alternative route to the Oklahoma ballot.").

Exhibit 3

ban on write-in voting. Plaintiffs contend that the Tenth Circuit's discussion regarding the validity of Oklahoma's ballot access scheme was mere *dicta*. However, before the Court could consider the constitutionality of Oklahoma's ban on write-in voting, it was required to consider the constitutionality of the Oklahoma's entire ballot access statutory scheme.

> Because we agree that there is a relationship between a States' ability to ban write-in voting and the ability of candidates to gain ballot access in other ways, *see Burdick v. Takushi*, 504 U.S. 428, ----, 112 S.Ct. 2059, 2067, 119 L.Ed.2d 245 (1992), our review of Oklahoma's write-in ban necessarily requires us to analyze Oklahoma's ballot access laws.

*Id.* at 495; *see also id.* at 497 ("Accordingly, a court must first review the State's overall ballot access scheme, weighing the States' interests in ballot access restrictions against the burdens those restrictions impose on voter's interests.").

> In *Coalition for Free and Open Elections*, the Court weighed
>
> "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Plaintiff [sought] to vindicate against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration not only the legitimacy and strengths of each of those interests," but also "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Id.* at 496-97 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). The Court continued on by noting its prior determination in *Rainbow Coalition v. Oklahoma State Election Bd.*, 844 F.2d 740 (10th Cir. 1988), upholding the constitutionality of Okla. Stat. tit 26 § 1-108, which provides for the recognition of a political party. The Court next considered the section at issue herein, Okla. Stat. tit. 26 § 1-101, the section which requires nonrecognized party electors to submit their signature petitions by July 15 of the election year. With regard to the 3% requirement, the Court noted:



> In contrast to the petition requirement that we upheld in *Rainbow*, which required recognized parties to file signature petitions equal to at least 5% of the votes cast in the last election for Governor or for Presidential electors, Oklahoma law requires electors for nonrecognized parties to submit petitions with signatures of registered voters equal to at least 3% of the total votes case in the most recent Presidential election. Because the 3% requirement is less burdensome than the 5% requirement we upheld in *Rainbow*, we find the 3% requirement constitutional as well. This conclusion is bolstered by the fact that the names of nonrecognized party electors must be submitted almost one full month *after* recognized parties must certify the names of their elector nominees. Okla. Stat. tit. 26 §§10-101.1(b), 10-101.

*Id.* at 498.

Plaintiffs contend that because no independent candidate was successful at petitioning onto the ballot in either the 2004 or 2008 presidential election, that the Court should conclude Oklahoma's ballot access law is unconstitutional. Despite Plaintiffs contention that the determination by the Tenth Circuit that Oklahoma's ballot laws are constitutional was merely *dicta*, the Court disagrees, and concludes that it is bound by the holding. *United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir.1990) (district court bound to follow precedent of the circuit court). The mere fact that no independent candidate was able to obtain signatures totaling 3% in the last two presidential elections is not dispositive of this case. In *Rainbow Coalition*, the Court noted that "[s]ince 1945, only two minority parties have successfully petitioned to gain recognized party status. . . . No third party has successfully petitioned to gain recognized party status in Oklahoma for a gubernatorial election year since 1974 when the petition signature requirement was changed from 5,000 signatures to five percent of the votes cast in the preceding general election." 844 F.2d at 742. Despite the inability of parties to obtain recognition, the Tenth Circuit concluded that Oklahoma's party access law, Okla.



Stat. tit. 26 § 1-108, was constitutional. The cases upon which Plaintiffs rely from outside the circuit do not provide a basis for ignoring the holding in *Rainbow Coalition* and *Coalition for Free and Open Elections*.

Plaintiffs also allege that the current structure of Oklahoma law violates the equal protection clause, because candidates for offices other than president and vice president have an alternative method of ballot access by way of payment of a filing fee. Okla. Stat. tit. 26 § 5-112. Plaintiffs contend that this disparity violates equal protection. This Court addressed this issue in *Natural Law Party v. Henley*, CIV-96-1525-R (Sept. 18, 1996), and concluded the statute was constitutional. The Court adopted this position in *Nader v. Ward*, Case No. CIV-00-1340-R (Aug. 30, 2000). The Court again adopts the analysis set forth in *Natural Law Party*, and as a result, Defendants are entitled to summary judgment on this claim.

In *Natural Law Party*, the plaintiffs asserted that Oklahoma's provision of an alternate route to the ballot for candidates of offices other than president and vice president, via payment of a filing fee rather than requiring signatures on a petition, violates the Equal Protection Clause of the United States Constitution. The Court disagreed.

> The Tenth Circuit Court of Appeals has already determined that Okla. Stat. tit. 26 § 101.101 and Okla. Stat. tit. 26 § 10-101.2 "impose only reasonable burdens on . . . Fifth and Fourteenth Amendment rights," employing the balancing test set forth in *Anderson v. Celebrezze*, *supra*. In the First Amendment context, the Supreme Court has said that "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights . . . a prohibition on write-in voting will be presumptively valid." *Burdick*, 504 U.S. at __, 112 S.Ct. at 2967, 119 L.Ed.2d at 258. Since write-in voting, like the proposed filing fee requirement, is an alternative avenue of ballot access to the signature petition requirement, and the same interests of potential candidates and voters are implicated in this equal protection challenge as are implicated in a First Amendment challenge



,the Court is of the opinion that it is reasonable to apply the *Burdick* presumption to Oklahoma's failure to provide a filing fee alternative means of ballot access in Sections 10-0101.1 and 10-101.2 similar to that in Section 5-112.

***

Because Oklahoma's level of support requirements for ballot access for presidential and vice-presidential candidates are reasonable and do not unnecessarily burden voters' fundamental rights, considering the character and magnitude of the asserted injury to their First and Fourteenth Amendment rights, and the interests already proffered by the State in *Rainbow* and *Coalition* as justifications for the burden imposed, the legitimacy and strength of those interests and the extent to which those interests makes it necessary to burden those rights, *see Coalition for Free and Open Elections v. McElderry*, *supra*, the Court does not see how the failure to provide some alternative means of ballot access can render the constitutional burden imposed on voters' rights by the signature petition requirement an unconstitutional burden and is of the opinion that it cannot.

*Natural Law Party v. Henley*, Case No. CIV-96-1525-R (W.D.Okla. Sept. 1. 1996), Order, p. 8-9, 11.  The Court again adopts this conclusion, and as a result, Defendants are entitled to summary judgment on Plaintiffs' contention that the inability to obtain ballot access for the offices of president and vice president via payment of a filing fee is unconstitutional.

For the reasons set forth herein, Defendants' motion for summary judgment is GRANTED.  Judgment shall be entered accordingly.

ENTERED this 30th day of April 2009.

*[signature]*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

**Exhibit 3**