## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ROQUE "ROCKY" DE LA FUENTE,　　　)
Candidate for President of the United　)
States, et al.,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
-vs-　　　　　　　　　　　　　　　)　　Case No. CIV-16-0914-F
　　　　　　　　　　　　　　　　　)
PAUL ZIRIAX, Secretary of the State　)
Election Board, et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

## <u>ORDER</u>

The defendants in this action are Paul Ziriax, Secretary of the State Election Board, and the Oklahoma State Election Board. They move to dismiss this action. Doc. no. 6. They argue that the State Election Board enjoys eleventh amendment immunity. They also argue that the complaint challenges the same Oklahoma election laws which have been repeatedly upheld in the courts, and that the complaint alleges nothing to plausibly suggest a different result in this action. Accordingly, defendants seek dismissal of this action under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim.

Plaintiffs filed a response brief. Doc. no. 7. Plaintiffs are alleged to be an Independent candidate (De La Fuente) and a Green Party candidate (Jill Stein) for president in 2016, as well as three registered Oklahoma voters. The complaint alleges that two of these voters (Leviness and Underwood) will abstain from voting for

president in 2016 if Stein's name does not appear on the 2016 ballot.[1]  The third voter (Jackson) alleges that she desires to vote for Stein in the 2016 presidential election and that she will serve as a presidential elector for Stein in Oklahoma.   In their response brief, plaintiffs concede that the State Election Board is entitled to eleventh amendment immunity.  The State Election Board will be dismissed from this action on that basis.  Otherwise, plaintiffs object to dismissal, arguing that the complaint states a claim upon which relief may be granted against Ziriax, the Secretary of the State Election Board.

Defendants filed a reply brief.  Doc. no. 8.

Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  To survive a  motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  Id.   The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  Ridge at Red Hawk, 493 F.3d at 1177.  In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  Id. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  When there are well-pleaded

---

[1]To the extent that claims relate to the 2016 presidential election they are moot.  The complaint, however, also requests relief with respect to subsequent general elections.

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

Discussion

The complaint challenges the constitutionality of three Oklahoma election statutes under the First and Fourteenth Amendments to the United States Constitution. The complaint seeks declaratory and injunctive relief.

The complaint challenges 26 O.S. 2011 §10-101.1, which concerns electors pledged to Independent candidates for president, and 26 O.S. 2011 §10-101.2, which concerns electors pledged to the nominee for president of a political party which is not recognized under the laws of Oklahoma. The complaint alleges that these statutes require an unnecessarily early petition filing deadline, and an unnecessarily high petition signature requirement, in order to access the ballot in Oklahoma. The complaint alleges that these requirements, standing alone and in combination with Oklahoma's ban on write-in voting (*see*, 26 O.S. Supp. 2011 § 7-127(1)), unreasonably burden plaintiffs' constitutional rights.

The complaint also challenges 26 O.S. Supp. 2010 § 5-112. Plaintiffs allege that § 5-112 unreasonably burdens them by discriminating in favor of Independent non-presidential candidates for statewide federal office (*i.e.* candidates for U.S. Senator) who have the option to pay a filing fee rather than obtain signatures to obtain ballot access, although candidates for the federal office of president who are either Independent candidates or candidates from non-recognized political parties, do not have a filing fee option and must obtain signatures to obtain ballot access. The

-3-

complaint alleges, therefore, that § 5-112 violates the Equal Protection Clause of the United States Constitution.

Courts have previously rejected these types of challenges to Oklahoma's election laws.

With regard to the early filing deadline, signature percentages, and the ban on write-in ballots, see, for example:

– Coalition for Free and Open Elections v. McElderry, 48 F.3d 493, 498-99 (10th Cir. 1995) (upholding July 15 deadline for signature petitions; upholding requirement that non-recognized parties submit petitions with signatures of registered voters equal to at least three percent of total votes cast in the most recent presidential election; holding that Oklahoma's ballot access laws governing non-recognized party electors impose only reasonable burdens on appellants' first and fourteenth amendment rights; having determined that Oklahoma's ballot laws do not impermissibly burden voters' constitutional rights and that a presumption of validity therefore attaches to Oklahoma's ban on write-in voting, appellants' interests were not strong enough to overcome that presumption).

With regard to the filing fee option which is provided to some but not all candidates in Oklahoma for federal office, see, for example:

– Natural Law Party v. Henley, CIV-96-1525-R (1996), filed as an exhibit in this case at doc. no. 6-2 , pp. 8-16 (denying a preliminary injunction; noting the Supreme Court stated in Burdick v. Takushi, 504 U.S. 428 (1992), that when a state's ballot access laws pass constitutional muster as imposing only reasonable burdens on first and fourteenth amendment rights, a prohibition on write-in voting will be presumptively valid; then applying the Burdick

presumption to conclude that Oklahoma's failure to provide the alternative, filing fee, means of ballot access does not constitute an unconstitutional burden; citing Coalition for Free and Open Elections v. McElderry, *supra*, as a decision which upheld Oklahoma's ballot access by payment of a filing fee; holding Oklahoma's ballot access scheme is not rendered unconstitutional simply because Oklahoma could have provided an additional alternative mode of ballot access, citing Supreme Court authorities);

– Nader v. Ward, CIV-00-1340-R (August 30, 2000), filed as an exhibit in this case at doc. no. 6-1, pp.6-7 (rejecting plaintiffs' challenge to 26 O.S. §5-112 as a statute which permits an alternate route, via payment of a filing fee, for candidates seeking ballot access for all state and federal offices except for president and vice-president; denying relief for purposes of a preliminary injunction and also on the merits); and

– Barr v. Ziriax, CIV-08-730-R (April 30, 2009), filed as an exhibit in this case at doc. no. 6-3, ecf pp. 7- 8 (granting summary judgment to defendants on plaintiffs' claim that § 5-112 is unconstitutional).

Faced with these decisions, plaintiffs make a variety of arguments in an effort to avoid dismissal. Plaintiffs argue that reconsideration of the constitutionality of Oklahoma's ballot access laws is appropriate in light of lowered requirements for Oklahoma's recognition of political parties. Plaintiffs also argue that the history of failed ballot attempts, and the passage of time, reveal that 26 O.S. §§ 10-101.1 and 10-101.2 have not been complied with since 1992. Plaintiffs argue that in such circumstances, the court is free to, and should, reconsider the constitutionality of the challenged statutes. Plaintiffs argue the court should hear evidence regarding, for example, the lack of success which Independent and non-recognized parties have had

in meeting Oklahoma's requirements for ballot access, and the relative restrictiveness of Oklahoma's ballot access laws compared to the laws of other states.  Plaintiffs also argue that certain decisions relied on by the defendants were entered at later stages of the litigation rather than at the motions to dismiss stage.

Plaintiffs have not alleged or otherwise identified any material changes in Oklahoma law, or any other changed circumstances, which would suggest that this action is not precluded under the logic and rulings of existing decisions which hold that Oklahoma's ballot access laws are constitutional.  The only change in election statutes which the complaint relies on to avoid application of previous court decisions, is the change which eases requirements for the recognition and retention of political parties.[2]  Such changes made it easier for minor political parties to have their electors appear on the Oklahoma ballot.  But plaintiffs are not political parties.  Moreover, the states need not treat minor political parties and the candidates of such parties identically in order for state laws to withstand constitutional challenge.  *See*, Arutunoff v. Oklahoma State Election Board, 687 F.2d 1375, 1380 (10th Cir. 1982) (Libertarians argued that, under Oklahoma law, minor political parties were dealt with differently than independent candidates and that such discrimination violated their fourteenth amendment rights; court stated, "It is our view...that the states need not treat minor political parties and independent candidates identically in order for state laws to withstand constitutional challenge.").  Lowering requirements for political

---

[2]When it enacted changes to 26 O.S. Supp. 2015 § 1-108, the legislature lowered the signature requirement for political party recognition. Previously, a political organization was required to submit signatures equal to at least five percent of the total votes cast in the last general election either for governor or for electors for president and vice-president.  Under the current version of the statute, to be recognized as a party, the political organization is only required to submit signatures in a number equal to three percent of the total votes cast in the last general election for governor.  A change in  26 O.S. Supp. 2016 § 1-109 lowered the number of votes which a recognized political party must receive in order to remain a recognized political party.

party recognition and retention does not materially impact the constitutionality of the ballot access statutes challenged in this action, and such changes are not a reason to revisit decided constitutional issues.

Plaintiffs argue that this case, in contrast to prior cases, alleges that an equal protection violation occurs because different means for ballot access are provided with respect to the only two statewide elections which are conducted in Oklahoma for federal office. This argument describes a distinction without a difference. The reasoning of the cases which uphold Oklahoma's different means of obtaining ballot access (signatures vs. filing fee) preclude this argument. Moreover, candidates for the nationwide federal office of president are not similarly situated to candidates for the statewide federal office of senator. The presidential office is the most important office in the nation, and it is the only office which is elected by state electors, facts which justify more rigorous ballot access rules for election to this office as compared to the office of senator. *See*, Nixon v. Fitzgerald, 457 U.S. 731, 749 (1982) (president occupies a unique position in the constitutional scheme).

Finally, the court notes plaintiffs' argument that past actions which have challenged Oklahoma's ballot access laws have progressed beyond the motions to dismiss stage. But where the law is clear, as it is here, it would be a waste of the parties' and the court's resources to permit this action to proceed.

Having carefully considered plaintiffs' arguments, the court finds and concludes that this action fails to state a claim upon which relief can be granted and should be dismissed.

## Conclusion

Defendants' motion is **GRANTED** and this action is **DISMISSED**, as follows.

The Oklahoma State Election Board is **DISMISSED** based on its eleventh amendment immunity, which has been conceded by the plaintiffs. As immunity is a

jurisdictional issue, the Election Board is dismissed, without prejudice, under Rule 12(b)(1), Fed. R. Civ. P.

The remaining defendant, Paul Ziriax, Secretary of the Oklahoma State Election Board, is **DISMISSED** from this action, with prejudice, because the complaint fails to state a claim upon which relief may be granted.  Rule 12(b)(6), Fed. R. Civ. P.

Dated this 13th day of December, 2016.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


16-0914p002.wpd